Citation Nr: 1710360 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 10-27 645 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to a rating in excess of 50 percent for schizophrenia.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

A. G. Alderman, Counsel


INTRODUCTION

The Veteran served on active duty from February 1970 to September 1977.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Togus, Maine. Jurisdiction of the claim is currently at the Detroit, Michigan RO.

The Veteran appeared and provided testimony before the undersigned Veterans Law Judge (VLJ) in March 2011. A transcript of the hearing has been associated with the claims file.

The Board remanded this matter in April 2014 and September 2016 for additional development. All development has been substantially completed. See Stegall v. West, 11 Vet. App. 268 (1998).

The current record before the Board consists entirely of electronic files known as Virtual VA and the Veterans Benefits Management System (VBMS).


FINDINGS OF FACT

1. The frequency, severity, and duration of the Veteran's symptoms have not caused occupational and social impairment with deficiencies in most areas at any time during the pendency of the claim.

2. The Veteran's combined disability rating has not met the schedular requirements for consideration of a TDIU and her symptoms related to her service-connected disabilities are not of the severity to warrant referral for extraschedular consideration.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 50 percent for schizophrenia have not been met. 38 U.S.C.A. §§ 1155, 5107, 5110(g) (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.132, Diagnostic Code 9204 (2016).

2. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.25 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016).

Here, the duty to notify was satisfied by way of a letter sent to the Veteran in March 2008 that fully addressed all notice elements and was sent prior to the initial RO decision in this matter. The letter informed the Veteran of what evidence was required to substantiate the claim and of her and VA's respective duties for obtaining evidence. Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In addition, the duty to assist the Veteran has also been satisfied. The Veteran's service treatment records, Social Security Administration (SSA) records, as well as identified private and VA medical treatment records have been obtained. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). The Veteran submitted copies of records and personal statements, and she was provided an opportunity to set forth her contentions during the hearing before the undersigned VLJ.

The Board remanded these matters in March 2014 and September 2016 for additional development, which has been substantially completed. See Stegall, 11 Vet. App. 268. Specifically, per the March 2014 Board remand, updated treatment records were obtained and a VA examination was conducted in May 2014, with an addendum opinion obtained in Septemebr 2014. Per the September 2016 remand directives, updated VA treatment records and records from the SSA were obtained and associated with the claims file. 

The Veteran was afforded VA medical examinations in April 2008 and May 2014. An addendum opinion was obtained in September 2014. The April 2008 and May 2014 VA examiners reviewed the claims file, examined the Veteran, and provided a detailed report documenting current symptoms. The September 2014 VA examiner reviewed the claims file and provided an opinion. Accordingly, the examination reports are adequate for rating purposes.

Significantly, neither the Veteran nor her representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Further, the Veteran has not raised any error with the notice or assistance provided by VA, to include any deficiencies with the hearing before the Board. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486. 

Finally, the Veteran presented testimony in a travel board hearing before the undersigned. The RO official or VLJ who conducts a hearing must fulfill two duties. See 38 C.F.R. § 3.103 (c)(2) (2016); Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of: (1) fully explaining the issues and (2) suggesting the submission of evidence that may have been overlooked. Bryant, 23 Vet. App. 488; 38 C.F.R. § 3.103 (c)(2). This was done during the March 2011 hearing before the Board as the VLJ noted the issue on appeal and asked questions and elicited information that indicated what information and evidence was necessary to prove the claims. Additionally, to the extent possible, VA obtained the relevant evidence and information needed to adjudicate this claim. Neither the Veteran nor her representative has asserted that VA has failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conducting of the Board hearing. Thus, the duties to notify and assist have been met.

II. Increased Rating

The Veteran seeks a disability rating in excess of 50 percent for her service-connected schizophrenia. Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. Part IV. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. 
§ 4.3.

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the veteran's disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

The Veteran's schizophrenia has been rated under 38 C.F.R. § 4.130, Diagnostic Code 9204. The criteria for rating mental disorders generally, and schizophrenia specifically, are listed under the General Rating Formula for Mental Disorders ("General Rating Formula"). 38 C.F.R. § 4.130. Prior to August 4, 2014, the nomenclature employed in the portion of VA's Rating Schedule that addresses service-connected psychiatric disabilities was based on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "DSM-IV"). 38 C.F.R. § 4.130. During the course of this appeal, VA amended the General Rating Formula and its regulations to remove outdated references to the DSM-IV. See 79 Fed. Reg. 149, 45094 (Aug. 4, 2014). The use of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) applies to all claims received by the VA or pending before the AOJ on or after August 4, 2014, but does apply to claims that have been certified for appeal to the Board or are pending before the Board as of that date, even if such claims are subsequently remanded to the AOJ. See id.; see also 80 Fed. Reg. 53, 14308 (Mar. 19, 2015). Here, the AOJ certified the Veteran's appeal to the Board in December 2010, thus the DSM-IV is for application. 

Prior to the August 4, 2014 amendment, the General Rating Formula provided that a 50 percent evaluation is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9204.

A 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

Diagnoses many times will include an Axis V diagnosis, or a Global Assessment of Functioning (GAF) score. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996).

A GAF score of 51 to 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). 

A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

A GAF score of 31 to 40 is meant to reflect an examiner's assessment of some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work). 

Symptoms listed in VA's General Rating Formula are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. Further, when evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely the basis of social impairment. 38 C.F.R. § 4.126(b).

The Board observes that the words "slight," "moderate" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. The use of descriptive terminology by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision. 38 U.S.C.A. § 7104(a); 38 C.F.R. §§ 4.2, 4.6.

The Board has reviewed all of the evidence in the claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss in detail the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims.

In her November 2007 claim, the Veteran indicated that over the past few years her mental condition had worsened. She had been extremely depressed and could no longer hold onto a job or maintain gainful employment. She reported continued occupational and social impairment, panic attacks, difficulty understanding things, sleep disturbances, and severe memory loss. She also reported having panic attacks, difficulty understanding things, sleep disturbance, and severe memory loss. She said she had been hesitant to tell her doctors about her symptoms because she feared being hospitalized again. She indicated that her disability prevented her from holding or obtaining employment. See also Statement, March 2008.

In support of her claim, the Veteran submitted VA treatment records. An April 2007 treatment record shows her depression and psychosis were in remission. A May 2007 treatment record shows she was somewhat depressed. She reported that her mother had been diagnosed with lung cancer, which triggered many feelings. She continued to be the main caretaker for her partner, which was stressful. July and October 2007 records show the Veteran stopped working in 2006 after her company closed. The provider found that her depression and psychosis were in remission. In October 2007, the provider assigned a GAF score of 55.

In February 2008, the Veteran reported that she felt depressed and noted that her brother died suddenly in December 2007. She and her partner of 20 years were getting along. The provider noted constricted affect and depressed mood. The provider found the Veteran's depression was in partial remission and psychosis was in remission. The provider assigned a GAF score of 55.

During her March 2008 VA examination, the examiner observed stiff posture, flat affect, and good hygiene and grooming. The Veteran's speech was restricted and she required considerable prompting for responses. However, she was alert and oriented to all spheres and her memory was intact. The examiner noted that her attention and concentration were mildly impacted. She responded appropriately to questions of simple social judgment and abstract reasoning. The Veteran reported that she had felt a little depressed and rated her mood at a 5. She reported feelings of depression related to her mother's diagnosis of cancer and concerns for a friend. She denied thoughts of injury towards herself and others. She stated that her sleep was good. She did not have nightmares or unusual behaviors during sleep. She also denied having difficulties with concentration or relating to other people. She denied the presence of hallucinations, delusions, or other psychotic symptoms. Regarding activities, the Veteran attended to her personal care and hygiene, household chores, and shopping. She visited with her mother and a friend on occasion, but described herself as a "home body." Her hobbies included watching television, reading, and completing crossword puzzles. She also took her partner and her mother to their medical appointments. She had no problems being around people in stores or large areas. The examiner diagnosed schizophrenia, undifferentiated type and assigned a GAF score of 55. In the commentary, the examiner stated that the Veteran had a history of positive symptoms of psychosis but that none were evident during the examination. The examiner pointed out that the Veteran had residual symptoms such as affective flattening, stiffness in presentation, and restricted speech, but denied difficulties relating with others and denied having difficulties at her previous employment. She lost her job due to the company closing and did not seek further employment. The examiner found the Veteran had mild difficulties with attention and concentration, which might cause mild difficulties with employment. However, the examiner was unable to find that she was unable to obtain employment since she had not made a concerted effort to do so. The examiner stated that her judgement did not appear impacted and while she reported mild impact on mood, in general, she was reporting mild to moderate symptoms.

During an April 2008 appointment, the Veteran requested an increase in her medication. She reported that her concentration was not good. She denied having anxiety or panic attacks. She noted increased feelings of depression and stated that she was not motivated to do things. The provider observed that her mood was depressed and dysthymic. Another April 2008 treatment record shows the provider found the Veteran tense, alert, communicative, and oriented to all spheres. Her speech was coherent, logical, and goal directed but at a retarded pace. Her mood was dysthymic but she denied suicidal or homicidal ideation. The Veteran rated her feeling of depression at a 4 of 10. She expressed anxiety about her financial future. She reported that she tended to isolate. She kept the house up for her partner but did little else.

In June 2008, the Veteran reported that she experienced constant sadness and occasional crying. The provider observed that she was tense, anxious, alert, oriented, and communicative. Her speech was coherent, logical, and goal directed. Her mood was depressed but she denied suicidal and homicidal ideation. She was not able to maintain eye contact and was appropriately dressed. She denied low energy, low motivation, low self-esteem, or sleep or dietary changes. She preferred isolation but visited her mother weekly. She said she felt close to her brother but never got to see him. Her daily activities included watching television, reading, and playing games on the computer or completing word find puzzles. A GAF score of 50 was indicated. 

In June 2008, the Veteran was examined by a provider with the SSA. The SSA examiner noted that the following abilities were moderately limited: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or proximity to others without being distracted by them; ability to interact appropriately with the general public; ability to respond appropriately to changes in the work setting; and ability to travel in unfamiliar places or use public transportation. The provider found that she had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. The examiner stated that the Veteran retained the ability to do rote tasks, was able to follow simple instructions, and may work better with minimal contact with the public. The examiner indicated that her concentration difficulties precluded complex technical tasks. 

July 2008 VA treatment records show she was tense, anxious, alert, oriented, and communicative. Her speech was coherent, logical and goal directed - but at a retarded pace. Her mood was euthymic, she was able to maintain eye contact, and she was appropriately dressed. She stated that she was feeling good and attributed her mood to her new medications. She rated her depression at a 0 without suicidal or homicidal ideations. She spoke of improved self-esteem, energy, and motivation. However, she had continued anhedonia and preferred to isolate. A separate July 2008 VA treatment record shows a GAF score of 50.

In August 2008, the Veteran's treating VA provider completed a questionnaire for SSA addressing the Veteran's mental health. The provider indicated that the Veteran had poor memory; sleep disturbance; mood disturbance; emotional lability; social withdrawal or isolation; blunt, flat or inappropriate affect; illogical thinking or loosening of associations; decreased energy; anhedonia or pervasive loss of interests; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; and difficulty thinking or concentrating. He stated that the Veteran was unable to function with others in the work environment and unable to complete tasks; however, no rationale in support of the opinion was provided. He indicated that her disability caused slight restriction of activities of daily living; marked difficulties in maintaining social functioning; often caused deficiencies in concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner in work settings or elsewhere; and repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.
 
A December 2008 VA treatment record indicates that the Veteran was less depressed. Her mood was serious. She denied hallucinations and suicidal ideation. The assessment was depression, recurrent, reactivated by several issues. The provider noted she had difficulties with several practical and financial issues. Her history of psychosis was in fair remission. The provider assigned a GAF score of 50.

In January 2009, the VA provider noted the Veteran was tense, anxious, alert, oriented, and communicative. Her speech was coherent, logical and goal directed. Her mood was dysthymic but she denied homicidal and suicidal ideations. She maintained eye contact and was appropriately dressed. She stated that she spent the holidays with her family and her partner. She continued to take her partner to his medical and therapy appointments. She indicated that she had been experiencing about twice per week episodes of sudden depressed mood with crying spells. She was more anxious about the health of her mother but had no other explanations for her sudden mood changes. She indicated that she became irritable when depressed. She preferred to isolate from others at home rather than be active or get exercise. She rated her depression at a 3 of 10 without homicidal or suicidal ideations. The assessment was major depressive disorder, recurrent, and history of schizophrenia, undifferentiated type.

In February 2009, the Veteran reported an improvement in symptoms. She stated that she did not feel depressed at all. The provider observed euthymic mood. The following day, she reported being depressed and having concerns about several matters. Her mood was noted as serious and depressed. She denied suicidal ideation. The provider assessed major depression, recurrent, reactivated by several issues. The provider noted she had difficulties with several practical and financial issues. Her history of psychosis was in fair remission. The provider assigned a GAF score of 50.

In June 2009, the Veteran reported exacerbated anxiety and rated her depression at a 3, without suicidal or homicidal ideation. She reported increased isolation, stating that she stayed in the apartment more often. She watched television. She and her partner were not going out to eat as often. The provider observed that she was tense, anxious, alert, oriented, and communicative. Her speech was coherent, logical and goal directed, and her mood was dysthymic without suicidal or homicidal ideations. The Veteran was able to maintain eye contact, and she was appropriately dressed.

In August 2009, the Veteran reported that her partner had been hospitalized for four weeks and that she stayed by his side. She had not been attending to her self-care and was exhausted. She had been paying the bills and taking care of the apartment but had not been doing things that she enjoyed. She reported feelings of depression and anxiety. The VA provider observed that she was tense, anxious, alert, oriented, communicative, and able to maintain eye contact. Her speech was coherent, logical and goal directed. She denied suicidal and homicidal ideation. The diagnosis was major depressive disorder, recurrent with current exacerbation. She had a history of schizophrenia. At another August 2009 appointment, similar symptoms were observed and a GAF score of 50 was assigned.

A September 2009 VA treatment record shows her mood was depressed and serious, with dysphoric affect. She denied the presence of suicidal thoughts, plans or intents. Regarding employment, she indicated that she had not worked in the last 2 years due to emotional issues. The provider indicated that she was having difficulties with stress, guilt and financial issues.

On September 17, 2009, the Veteran had a medical evaluation with a provider with SSA. She reported having depressed feelings on and off. She noted difficulty concentrating and reported that she did not like going outside of her house. She had no difficulty sleeping. The examiner observed that she presented in a highly constricted, measured manner. She maintained a slow personal style and limited her responses. The Veteran reported that she last worked in 2006 as an inventory clerk for 15 years and was unable to continue working because he kept getting depressed. She reported that she had to take care of her partner due to his significant physical issues. Her daily activities were centered on his care. The examiner observed that the Veteran did not take pride in her physical appearance and was not self-directed. Her motivation was affected by her diminished energy levels and depressive mentation. Her mental processing was slowed and she limited her replies to open-ended questions. She denied auditory and hallucinatory activity with paranoia. Her affect was flat and her mood was suggestive of depressive features given her slow personal tempo and diminished productive daily activity. The diagnosis was major depressive disorder and schizophrenia, undifferentiated type. The examiner assigned a GAF score of 45. The examiner stated that based on the examination, the Veteran would be able to retain and follow through with simple, structured and repetitive tasks. The examiner stated that she had sustained self-care management with limitations and would have difficulty managing benefit funds directed to her consistently well without some directed assistance. 

On the SSA worksheet for identifying ability to do work-related activities, the examiner stated that the Veteran's mental health would mildly impact her ability to understand and remember simple instruction, carry out simple instructions, and make judgments on simple work-related decisions. Her mental health would moderately impact her ability to understand and remember complex instructions and markedly impact her ability to carry out complex instructions and make judgments on complex work-related decisions. The examiner also found her mental health would markedly impact her ability to interact with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. The examiner stated that her emotional disturbances and psychosocial stressors were significant. 

A VA treatment record dated September 18, 2009, the day after her SSA evaluation, shows the Veteran reported that her partner was home from the hospital. She was taking care of administrative matters and stated that she received support from her mother and sister. However, she worried about her mother due to her mother's cancer. She rated her depression at a 3 or 4 without homicidal or suicidal ideation. The provider observed that she was tense, anxious, alert, oriented, and communicative. Her speech was coherent, logical and goal directed. Her mood was dysthymic. She was able to maintain eye contact and was appropriately dressed.

In November 2009, the Veteran reported improved coping and less stress due to her partner and mother. The provider observed normal appearance and grooming. She was pleasant and cooperative. Her speech was logical, coherent, and goal directed. Her mood was serious and depressed with dysphoric affect. Her thought process was intact and she denied hallucinations. She was fully alert and oriented and denied the presence of suicidal thoughts, plans or intents. The provider assigned a GAF score of 50.

In February 2010, she reported considerable anxiety and worry about getting a new therapist. She said she felt abandoned and alone. She worried about finances should her partner die since they are not married, which caused her to become increasingly anxious and unable to problem solve. She rated her current depression at a 5 of 10 without suicidal or homicidal ideations. She indicated that she felt really sad at times and could only cry. She also reported racing thoughts and said she felt overwhelmed.

In March 2010, she reported that she would get stressed over her partner and her mother. She also reported guilt and financial issues. She described herself as being more depressed. She was having more issues with her partner because his mental condition had deteriorated and he threatened her with violence. She reported increased dysphoria and fears related to her partner and her mother. The provider indicated that her mood was serious and depressed with dysphoric affect. A GAF score of 50 was indicated. 

In September 2010, the Veteran reported she was increasingly depressed marked by sad mood and feelings of hopelessness at times. She denied any plan for self-harm, however, noting that both her partner and her mother were significant reasons for living. She reported decreased energy and concentration levels, as well as increased feelings of irritability. Her mood was depressed and affect was flat. 

In addition to the medical evidence, the Veteran testified before the undersigned VLJ in March 2011. With considerable prompting, she indicated that when driving to the hearing, she missed her exit because she was lost in her mind. See Transcript at 3. She said that she and her partner helped each other get through the day. She also reported that in the last six months, she had thought about suicide two or three times. She testified that she had periods when she felt depressed. The feeling would last a couple of hours and then go away. She reported having episodes of depression related to taking care of her partner and her sick mother. She had mild episodes or feeling of panic and said she had few friends. She could not work because she could not leave her partner alone. He had issues falling and had dementia. She was his guardian. She managed his care but it was difficult. Her sister helped her care for her mother. Regarding work, she stated the she could type but again, could not leave her partner alone. She also indicated that she does not like to be around a lot of people. She would not become irritated without provocation. She denied having obsessional rituals but indicated that everything at her home had a place. She purposefully put things in specific places so she could remember where the objects were located. She did not report any deficiencies with activities of daily living.

In April 2011, the Veteran reported having visual experiences for about three months, in which she sometimes saw others, such as her partner or "ghosts," and discovered that no one was really there. She tended to engage in isolating activities when not interacting with her partner, such as reading, watching television, or playing computer games. She became sadder on the weekends when she had little to do. She indicated that she might join a book club or start attending church. The provider observed euthymic mood, which was less depressed, and flat affect. At a different April 2011 appointment, a GAF score of 50 was assigned.

In May 2011, the Veteran reported that she felt like she was being watched by her partner while exercising or bathing and by others while in her bedroom watching television. She reported that this had occurred on 5 or 6 occasions since her last appointment. She associated the idea of being watched by her partner as fear of being criticized by him. The provider indicated that the Veteran's mood was less depressed and her affect was flat. Thought processes were normal, judgment and insight were fair, and she denied current suicidal/homicidal ideation, intent, or plans.

A June 2011 general ambulatory care outpatient treatment record shows the Veteran denied problems with depression, mania, anxiety, hallucinations. A June 2011 mental health treatment record shows the Veteran was treated for depression and irritability related to her distress over the responsibility of caring for her partner, who also had a mental illness and was wheelchair-bound. She reported that her mother was hospitalized related to complaints of pain and mental confusion. Her mood was described as less depressed with flat affect. In July 2011, her mood and affect were noted as serious. She denied the presence of suicidal thoughts, plans or intents. She denied the presence of auditory, visual or tactile hallucinations. A GAF score of 50 was assigned.

In March 2012, the Veteran denied suicidal homicidal ideation, intent, or plans. She reported feeling fatigued and lacked motivation to complete projects or chores at home over the past few weeks. She noted getting approximately 8-9 hours of sleep per night and insisted that her mood was good. The provider observed that her mood was euthymic and affect was flat.

In September 2012, she reported feeling depressed and noted poor sleep. Her mood was euthymic and affect was flat.

In November 2012, the Veteran reported feeling increasingly depressed with crying spells and decreased motivation to do things, especially in the last two weeks. She was fatigued and felt overwhelmed with responsibilities. Her mood was somber and her affect was flat.

A December 2012 VA treatment record notes serious mood and affect as well as a GAF score of 55.

June, July and September 2013 treatment records show the Veteran reported being stressed over caring for her partner. She reported fatigue and said she had to push herself to do things, such as cooking and shopping. The provider observed mildly dysphoric mood and flat affect. Her judgment and insight were fair. She denied suicidal and homicidal ideation, intent, or plan. June and September 2013 treatment records show her mood and affect were serious with a GAF score of 55.

November 2013 and February 2014 psychiatric progress notes show her mood and affect were serious. She denied suicidal and homicidal ideation, intent, or plan. No abnormalities were indicated with appearance, behavior, speech, thought content or process, perception, or cognitive functioning. The assessment was major depression, recurrent, related to the care of her partner, and a history of psychosis. A GAF score of 55 was indicated.

An April 2014 VA treatment record shows report of depressed mood and irritability associated with the Veteran's distress over the responsibility of caring for her partner. She denied suicidal and homicidal ideation, intent, or plan. The Veteran reported ongoing depressed mood with a feeling of wanting to cry, though she stated she was unable to do so. She felt overwhelmed taking care of her partner and worried when she left him alone for any period of time. She was fatigued, but her appetite and sleep appeared to be ok. The provider noted euthymic mood and flat affect. Her thought processes were clear, logical, and relevant. Her judgment and insight were fair. The impression was schizophrenia and recurrent depression. 

The Veteran had a VA examination in May 2014. The examiner observed flat, constricted affect and clear and goal directed thoughts. She answered questions appropriately. The Veteran described her mood as good and denied anxiety, depression, insomnia, suicidal and homicidal ideation or plan, and sleep disturbance. She was oriented to person, place and time. The Veteran reported that she would watch television, play games on the computer, and occasionally visit her sister. She took care of her partner and did all of the household chores. She reported that she last worked in 2006 until her company was sold. She did not go back to work because she was taking care of her partner. She said she could work if she did not have to take care of him. The diagnosis was psychosis, schizophrenia undifferentiated, in remission with medications. The examiner found the Veteran's schizophrenia caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The examiner found that the Veteran's condition did not affect her social and industrial functioning as she said she could work if she did not have to care for her partner of 30 years who has dementia. The examiner said the Veteran had been stable on her current medications with no psychosis, depression or anxiety. The examiner pointed out that the Veteran was the guardian for her partner. She also drove, grocery shopped, cleaned her home, did the laundry and paid her bills. She had no problems in her job for 15 years while working for a distribution company. Veteran was compliant with monthly psychotherapy sessions and maintaining treatment with psychiatrist.

The Veteran had another VA examination in September 2014. She reported that her partner of 33 years had died three weeks prior to the examination. She indicated that she had been sad and missed him. She worried about losing her apartment without his financial contribution. She spoke to her sister on the telephone every day and liked to watch television, read, and use the computer. She indicated that she did not want to work but felt that she would be able to work in the future. She has an associate's degree as a medical secretary. She denied having problems driving, taking care of her finances, or performing activities of daily living. She reported feeling depressed. She denied having psychotic symptoms or psychiatric hospitalization. She also denied having suicidal ideation. The examiner noted symptoms of depressed mood, anxiety, and flattened affect. The examiner diagnosed schizophrenia and found that the condition caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The examiner concluded that the Veteran's mental health disorder does not impact her social or industrial functioning or affect her ability to hold gainful employment under minimal stress and supervision.

In September 2014, the Veteran reported that her partner passed away. She had been sad and missed him. The provider indicated that her mood and affect were serious, with grief over her partner's death. No abnormalities with appearance, behavior, speech, thought process, perception, or orientation were noted. She denied the presence of suicidal thoughts, plans or intents. A GAF score of 55 was indicated.

In February 2015, the Veteran reported that she was feeling well. She had no complaints of depression, anxiety, or psychotic symptoms. She felt she had grieved adequately and had a sense of liberation since her long-time partner passed away. She admitted having intermittent periods of downcast moods, but denied any feelings of hopelessness or suicidal thinking. The provider indicated that her mood was normal, with flat affect. Her thought processes were clear, logical and relevant. Judgment and insight were fair.

In March 2016, a VA provider observed that her behavior was passive, her affect was blunted, and she was slow to respond. The Veteran reported feeling depressed and sad. She wanted to cry and said she sometimes had crying spells. Her sleep and appetite were ok but she sometimes had loss of motivation. She reported that her depression had worsened over the last two weeks. Notably, a friend of hers died two weeks prior.

In September 2016, the Veteran reported that her brother had died in June after an illness. The provider observed normal appearance, behavior, speech perception, and cognitive ability. The Veteran's mood was serious and her affect was serious and worried. Her thought process was intact and she was fully alert and oriented. She denied the presence of suicidal thoughts, plans or intents. A GAF score of 55 was continued.

The Board has reviewed all of the evidence and has considered the Veteran's arguments; however, the evidence does not support the assignment of a rating in excess of 50 percent. First, the Board points out that the Veteran's schizophrenia has been in remission during the pendency of the claim. The Veteran's symptoms have been attributed to major depressive disorder, with exacerbations related to serving as the full-time caretaker of her former partner, her mother's illness, and financial stress. Even assuming a relationship between major depressive disorder and schizophrenia, the Veteran's symptoms have not been of the frequency, severity, and duration to cause occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood. The Board points out that the sample of symptoms provided under the General Rating Formula for a 70 percent schedular rating include suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. At no time during the pendency of the claim has the Veteran exhibited these symptoms or symptoms of similar severity that were of the frequency, severity and duration to result in deficiencies in most areas.

The Board acknowledges the Veteran's November 2007 statement in support of her claim in which she reported that she had been extremely depressed and could no longer hold onto a job or maintain gainful employment. Further, she reported continued occupational and social impairment, panic attacks, difficulty understanding things, sleep disturbances, and severe memory loss. However, her reported symptoms are not supported by the record, to include her reports to VA providers and observations documented by providers.

While the Veteran testified before the Board that she had thoughts of suicide two or three times in the six-month period prior to her March 2011 hearing, VA general health and mental health providers consistently noted her denial of suicidal intent, thoughts and plans throughout the pendency of the claim, to include the period in question. Further, her speech has been logical, coherent, and goal directed. Her grooming has been adequate and she exhibited normal thought content or process, perception, and cognitive functioning. Her judgment and insight were consistently noted as fair. She maintained relationships with a friend, her partner, her mother, and her siblings. At most, the treatment records show the Veteran had mild memory loss, occasional restricted speech, difficulty in understanding complex commands, disturbance of motivation and mood, abnormal affect, and mildly impacted concentration and attention. Despite her November 2007 statement to the contrary, records do not show report of panic attacks, sleep disturbances, or severe memory loss. The Board notes that in April 2011, the Veteran reported hallucinations but she has consistently denied such before and after that time. Notably, the symptoms noted during the pendency of the claim and the frequency, severity, and duration of them are encompassed in the criteria for a 50 percent rating. 

The Board observes that the Veteran's mood was described as serious, dysphoric without thoughts of suicide, or depressed. Her affect was congruent with mood. However, her mood fluctuations have not caused deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood. While the Veteran's mood fluctuated during the pendency of the claim, her feelings of depression and occasional crying spells did not affect her ability to function independently, appropriately and effectively. In fact, during the course of the claim, the Veteran was a full-time caretaker for her partner until his death in 2014. She was able to help him through his activities of daily living and perform her own. She kept track of the bills and payments, household chores, shopping, and cooking. Her hobbies included watching television, playing computer games, reading, and working puzzles. For a period, she helped with her mother's care when her mother was fighting cancer. Consequently, the Board cannot find that the Veteran's abnormal mood and affect were of the frequency, severity and duration to result in occupational and social impairment with deficiencies in most areas.

Regarding occupational impairment, the Veteran has presented inconsistent statements. She has indicated that she cannot work due to emotional issues. She has also reported to medical providers, including the May 2014 VA examiner, and testified before the Board, that she stopped working in 2006 after her company closed and chose to forego further employment to serve as the full-time caregiver to her partner. The March 2008 VA examiner found that the Veteran did not have difficulties relating to others and did not have difficulties with her previous employer. The examiner noted mild difficulties with attention and concentration, which might cause mild difficulties with employment. During the May 2014 VA examination, the Veteran stated that she could work if she did not have to take care of her partner. During the September 2014 VA examination, which was conducted after the death of her partner, the Veteran stated that she did not want to work but felt that she would be able to work in the future. The May and September 2014 examination reports indicate that the Veteran's schizophrenia caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. Thus, the examination reports do not support the finding that the Veteran's mental health symptoms resulted in occupational impairment with deficiencies in most areas. 

The Board has considered the records from the SSA. Notably, the June 2008 evaluation showed the Veteran's mental health caused mild to moderate occupational and social impairment. However, based on the restrictions noted in the report, the Board finds that the impairments noted are not of the severity to result in impairments in most areas, the criteria for a 70 percent rating. Regarding the September 2009 SSA evaluation, the examiner indicated that the Veteran had sustained self-care management with limitations and would have difficulty managing benefit funds directed to her consistently well without some directed assistance. However, she had been maintaining her self-care and the care of her partner, and managing the home. Notably, the following day the Veteran met with her VA provider, whom indicated that she was taking care of administrative matters for herself and her partner. Other symptoms documented in the report are encompassed in the criteria for the currently assigned 50 percent rating.

The Board has also considered the August 2008 report completed by the Veteran's treating VA provider and which was submitted to the SSA for consideration. However, the Board finds this report is not consistent with the same provider's reports contained in the VA treatment records. Specifically, the provider indicated sleep disturbance, which VA records show the Veteran denied as recently as June 2008, as well as a notation of illogical thinking or loosening of associations and difficulty thinking or concentrating. However, prior to this report, VA treatment records consistently show normal speech, thought process, and cognitive abilities. At most, the March 2008 VA examination report and April 2008 VA treatment record shows mild impact in attention and concentration abilities. Further, the provider stated that the Veteran was unable to function with others in the work environment and unable to complete tasks; however, no rationale in support of the opinion was provided. On several occasions the Veteran reported that she stopped working to care for her partner and did not have difficulties with others while employed. She noted that while she did not want to return to work, she likely could. She also maintained her home, her activities of daily living, hobbies, and served a full-time caretaker to her partner. Thus, the Board finds the August 2008 report inconsistent with the treatment records created during the Veteran's regular course of appointments with this provider.

The Veteran argues that her GAF scores warrant the assignment of a higher disability rating. During the pendency of the claim, VA treatment records have indicated GAF scores of 50 and 55. The SSA evaluator assigned a GAF score of 45. However, GAF scores, while probative, are not dispositive. As discussed above, the reported and recorded symptoms have not been shown to be of the frequency, severity and duration to cause occupational and social impairment with deficiencies in most areas. The GAF scores assigned during the pendency of the claim indicate moderate to serious symptoms, which are encompassed in the criteria for a 50 percent rating. GAF scores aligning with the criteria for a 70 percent rating range from 31 to 40, a range meant to reflect an examiner's assessment of some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. Consequently, a rating in excess of 50 percent is not warranted based on the assigned GAF scores.

The Board has considered the Veteran's arguments and all of the evidence, but finds that her symptoms during the pendency of the claim have not been of the frequency, severity, and duration to warrant the assignment of a rating in excess of 50 percent. Her symptoms have not caused occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood nor have her symptoms resulted in total occupational and social impairment. Therefore, a rating in excess of 50 percent is not warranted.

The Board has also considered whether a referral for extra-schedular rating is warranted. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule; therefore, the assigned schedular evaluation is adequate, and no referral is required. See VAOPGCPREC 6-96; see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993)(a threshold finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate is required for extra-schedular consideration referral).

The evaluation for the Veteran's schizophrenia is adequate as the schedular criteria adequately encompass her symptoms, as described in detail above. The evidence has not shown that the Veteran's symptoms have caused occupational and social impairment with deficiencies in most areas or total impairment. Moreover, the Veteran has submitted no evidence showing that this disorder has markedly interfered with her employment status beyond that interference contemplated by the assigned evaluation, and there is no indication that this disorder has necessitated frequent, or indeed any, periods of hospitalization during the pendency of this appeal. As such, the Board is not required to remand this matter to the RO for the procedural actions outlined in 38 C.F.R. § 3.321(b)(1), which concern the assignment of extra-schedular evaluations in "exceptional" cases. See Thun, 22 Vet. App. 111

III. TDIU

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the veteran is unable to secure or follow a "substantially gainful" occupation (i.e. work which is more than marginal, that permits the individual to earn a "living wage," 38 C.F.R. § 4.16(b) (2016); Moore v. Derwinski, 1 Vet. App. 356 (1991), as a result of service-connected disabilities, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Under VA regulations, when a claimant fails to meet the percentage requirements for eligibility for a total rating set forth in 38 C.F.R. § 4.16(a), the RO may submit such case to the Director, Compensation and Pension Service (Director), for extraschedular consideration. 38 C.F.R. § 4.16(b). The Board is precluded from granting a total rating under section 4.16(b) because the authority to grant such a rating is vested specifically in the Director. Should the Board find that a case it is reviewing on appeal is worthy of consideration under section 4.16(b), the Board may remand the case to the RO for referral to the Director, but the Board may not grant a total rating in the first instance. See Floyd v. Brown, 9 Vet. App. 88, 95 (1996) (noting that Board may consider whether referral to "appropriate first-line officials" for extra-schedular rating is required); see also Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Thus, the decision by the RO whether to refer a case to the Director for extra-schedular consideration is an adjudicative decision subject to review by the Board. Moreover, where there has been a review by the Director, that determination is subject to review by the Board on appeal. Anderson v. Shinseki, 22 Vet. App. 423, 277-28 (2009) (noting that "although the Board is precluded from initially assigning an extraschedular rating, there is no restriction on the Board's ability to review the denial of an extraschedular rating on appeal.").

Entitlement to TDIU requires the presence of an impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2016). 

In this case, the Veteran has only one service-connected disability, schizophrenia, which is rated 50 percent disabling. Thus, the Veteran does not meet the schedular criteria for consideration of a TDIU. However, the Board must consider whether referral to the Director for extraschedular consideration is warranted. In this case, such referral is not warranted.

As discussed above, the Veteran has presented inconsistent statements about the impact of her mental health on employment. She has indicated that she cannot work due to her service-connected disability. She has also reported to medical providers, including the May 2014 VA examiner, and testified before the Board, that she stopped working in 2006 after her company closed and chose to forego further employment to serve as the full-time caregiver to her partner. The March 2008 VA examiner noted the Veteran's report that she did not have difficulties relating to others and did not have difficulties with her previous employer. The examiner indicated she had mild difficulties with attention and concentration, which might cause mild difficulties with employment. During the May 2014 VA examination, the Veteran stated that she could work if she did not have to take care of her partner. During the September 2014 VA examination, which was conducted after the death of her partner, the Veteran stated that she did not want to work but felt that she would be able to work in the future. The May and September 2014 examination reports indicate that the Veteran's schizophrenia caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. Thus, the VA examination reports do not support the finding that the Veteran's mental health symptoms render her unable to obtain and maintain substantially gainful employment. 

The Board has also reviewed the Veteran's work history report provided to SSA. At her previous job, she worked in distributing as a table leader, order filler, scanner, RA/damages clerk, shipper, and inventory clerk. Her job duties included readying merchandise for sale and shipment, checking damaged merchandise/quality control, and maintaining inventory. Job skills used on a regular basis included accounting, sorting/inspections, lifting, carrying and occasionally supervising others. 

In June 2008, the SSA examiner noted that the Veteran's following abilities were not significantly limited: ability to remember locations and work-like procedures; ability to understand, remember, and carry out very short and simple instructions; ability to perform activities within a schedule maintain regular attendance and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to make simple work-related decisions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to be aware of normal hazards and take appropriate precautions; ability to set realistic goals or make plans independently of others.

The following abilities were moderately limited: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or proximity to others without being distracted by them; ability to interact appropriately with the general public; ability to respond appropriately to changes in the work setting; and ability to travel in unfamiliar places or use public transportation. The SSA examiner indicated that her concentration difficulties precluded complex technical tasks. In another section, the examiner indicated that she retained the ability to do rote tasks and follow simple instructions. He found that she may work better with minimal contact with the public.

Based on the limitations noted in the June 2008 report, it appears that the Veteran could obtain substantially gainful employment in a similar field as documented by in the Veteran's work history report provided to SSA.

The Board has also considered the August 2008 report completed by the Veteran's treating VA provider and which was submitted to the SSA for consideration. However, the Board finds this report is not consistent with the same provider's reports contained in the VA treatment records. The report also is inconsistent with the June 2008 findings from the SSA examiner. The September 2009 SSA examiner indicated that the Veteran would be hable to retain and follow through with simple, structured and repetitive tasks.

Based on the foregoing, the Board finds that in light of the Veteran's work history and skill set, the evidence has not shown that she would be unable to obtain and maintain employment based solely on her service-connected schizophrenia. Moreover, she has indicated that she stopped working to take care of her partner and is likely able to work. Thus, the Board finds that referral to the Director for extraschedular consideration is not warranted at this time. The appeal is denied.



ORDER

Entitlement to a rating in excess of 50 percent for schizophrenia is denied.

Entitlement to a TDIU is denied.



______________________________________________
LANA K. JENG
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs