﻿Citation Nr: AXXXXXXXX
Decision Date: 06/20/19 Archive Date: 06/19/19

DOCKET NO. 190117-1907
DATE: June 20, 2019

ORDER

Entitlement to a disability evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD) with alcohol abuse is denied.

Entitlement to a disability evaluation in excess of 60 percent for prostate cancer, status post radical prostatectomy, is denied.

Entitlement to a compensable disability evaluation for erectile dysfunction is denied.

Entitlement to a compensable disability evaluation for residuals of incisional hernia, status post surgical correction, is denied.

REMANDED

Entitlement to an earlier effective date for the award of special monthly compensation (SMC) by reason of being housebound due to service-connected disabilities, awarded from June 22, 2017, to August 1, 2017, is remanded.

Entitlement to a disability evaluation in excess of 10 percent for bowel obstruction, status post abdominal surgery, is remanded.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

1. The Veteran's PTSD manifested by symptoms productive of functional impairment comparable to occupational and social impairment with deficiencies in most areas, but not total occupational and social impairment.

2. The Veteran is in receipt of the maximum schedular rating for voiding dysfunction associated with his prostate cancer, status post radical prostatectomy, resulting in urinary frequency of daytime voiding intervals between one and two hours, and nighttime awakening to void five or more times.

3. The Veteran's service-connected erectile dysfunction is productive of loss of erectile power, but not deformity of the penis.

4. The Veteran's residuals of incisional hernia, status post surgical correction, have not been shown to be manifested by weakening of the abdominal wall, nor indication for a supporting belt.

CONCLUSIONS OF LAW

1. The criteria for a disability evaluation in excess of 70 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2018).

2. The criteria for a disability evaluation in excess of 60 percent for prostate cancer, status post radical prostatectomy, have not been met. 38 U.S.C. §§ 1155, 5107 (2014); 38 C.F.R. §§ 4.1 – 4.7, 4.115a, 4.115b, Diagnostic Code 7528 (2018).

3. The criteria for a compensable disability evaluation for erectile dysfunction have not been met. 38 U.S.C.A. §§ 1155, 5107 (2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.10, 4.14, 4.115b, Diagnostic Code 7522 (2018).

4. The criteria for a compensable disability evaluation for residuals of incisional hernia, status post surgical correction, have not been met. 38 U.S.C.A. § 1155, 5107; 38 C.F.R. §§ 4.114, Diagnostic Code 7805-7339 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1963 to October 1966.

These matters come to the Board of Veterans Appeals (Board) on appeal from an August 2017 Rating Decision by the Regional Office (RO) in Milwaukee, Wisconsin. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2018), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, the Rapid Appeals Modernization Program (RAMP). The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in August 2018. Accordingly, the November 2018 RAMP Rating Decision considered the evidence of record as of the date VA received the RAMP election form. In January 2019, the Veteran timely appealed the November 2018 RAMP Rating Decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). As explained in the January 2019 RAMP selection form, “direct review” means that the Board’s decision must be based upon the evidence of record at the time of the prior decision, with no evidence submission or hearing request. As such, the Board has considered only the evidence of record at the time of the November 2018 RAMP Rating Decision. Evidence, including an October 2010 correspondence from the Veteran’s attorney, was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. See Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2(w)(1), 131 Stat. 1105, 1114 (2017). The Veteran may file a Supplemental Claim and submit or identify this evidence. See § 2(i)(1), 131 Stat. at 1109. If the evidence is new and relevant, then VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Disability evaluations (ratings) are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2018).

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The medical, as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10 (2018). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2018). Reasonable doubt regarding the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2018). Separate ratings can be assigned for separate periods of time based on facts found, a practice known as "staged" ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102 (2018).

1. PTSD

The Veteran seeks entitlement to an evaluation in excess of 70 percent for his service-connected PTSD with alcohol abuse. 

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Use of the term "such symptoms as" in § 4.130 indicates that the list of symptoms that follows is "non-exhaustive," meaning that VA is not required to find the presence of all, most, or even some of the enumerated symptoms to assign a particular evaluation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013); see Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir.2004); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). 

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships, cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name, cause total occupational and social impairment. 

Here, the Veteran was provided a VA PTSD examination in July 2017, at which time he was diagnosed as having PTSD resulting in occupational and social impairment with reduced reliability and productivity. At that time, the Veteran reported that he and his wife had sold their home and moved into housing for senior citizens, and that he continued to be the caregiver for his wheelchair-bound wife. He indicated that he spent his days helping his wife with her self-care activities and that he occasionally went out with his wife in addition to visiting with a friend every few months. The Veteran also reported panic attacks triggered by writing checks and driving, but denied engaging in psychotherapy, psychiatric hospitalizations, or self-harm behaviors. He noted occasional passive suicidal ideation, but adamantly denied any current suicidal ideation, plan, or intent. He also described feeling more angry than usual and reported yelling at people in public if they were rude to his wife. He further reported having nightmares about his time in Vietnam, and that he struggled to fall back asleep after these nightmares. Objectively, the Veteran demonstrated depressed mood, anxiety, panic attacks more than once per week, chronic sleep impairment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, as well as an inability to establish and maintain effective relationships. He was well-groomed and casually dressed. His mood was dysthymic with congruent affect, and he did not demonstrate evidence of impairment due to a thought, speech, or cognitive disorder. 

In a January 2018 Vocational Assessment submitted by the Veteran’s attorney, a vocational consultant who interviewed the Veteran over the telephone indicated that his PTSD symptomatology included intrusive thoughts, anxiety, anger, flashbacks, hypervigilance, panic attacks approximately three to four times per week, avoidance of crowds and public places, disturbed sleep from nightmares, difficulty with concentration and focus, lack of motivation to complete self-care, and lack of motivation to initiate and complete household tasks. The assessment also indicated that the Veteran’s daughters lived locally and assisted him with household chores. The vocational consultant cited the July 2017 VA examiner’s conclusion that the Veteran’s PTSD symptomatology resulted in clinically significant distress or impairment in social, occupational, or other important areas of functioning, as well as occupational and social impairment with reduced reliability and productivity.

As discussed above, the Veteran’s psychiatric disability has been manifested by depressed mood, anxiety, avoidance, panic attacks 3 to four times per week, flashbacks, nightmares, chronic sleep impairment, disturbances of motivation and mood, passive suicidal ideation (but no suicidal plan or intent), difficulty in establishing and maintaining effective work and social relationships, as well as an inability to establish and maintain effective relationships. Additionally, there were findings of good hygiene, and no evidence of impairment due to a thought, speech, or cognitive disorder, delusions or hallucinations. However, the Veteran’s psychiatric symptomatology has not risen to the level of severity, frequency, or duration to demonstrate total occupational and/or social impairment at any time during the appeal period to warrant the maximum rating. To the contrary, the July 2017 VA examiner explicitly found that the Veteran’s service-connected psychiatric symptomatology resulted in occupational and social impairment with only reduced reliability and productivity. This conclusion was cited by the Veteran’s own private vocational consultant in January 2018. In fact, the Veteran has demonstrated ongoing effective relationships with his disabled spouse and his friend. Not only is the Veteran capable of performing the activities of daily living, he also demonstrated the ability to function as his wife’s primary caregiver. As such, a rating in excess of 70 percent is not warranted at any time during the appeal period. See 38 C.F.R. § 4.130, Diagnostic Code 9411. 

The Board is aware that the symptoms listed under the maximum rating of 100 percent are essentially examples of the type and degree of symptoms for that rating, and that the Veteran need not demonstrate those exact symptoms to warrant a higher rating. See Mauerhan, 16 Vet. App. at 436. Moreover, entitlement to such an evaluation requires sufficient symptoms of the requirements, or others of similar severity, frequency, or duration, that cause the specific type of occupational and social impairment. See Vazquez-Claudio, 713 F.3d at 117-18. In this case, the Board has considered the maximum rating for the appeal period, but finds that it is rated appropriately. The signs and symptoms manifested are contemplated by the currently-assigned rating of 70 percent as they do not manifest with the severity required for the maximum rating. Again, the Board has considered the Veteran’s reported history of symptomatology related to the service-connected PTSD. See Layno, 6 Vet. App. at 470. His credible descriptions of his observable symptoms are not more closely described by the 100 percent criteria. As such, the preponderance of the evidence is against the claim for an increased rating for PTSD.

2. Prostate Cancer, Status Post Radical Prostatectomy

The Veteran also seeks entitlement to a disability evaluation in excess of 60 percent for prostate cancer, status post radical prostatectomy. The Board notes that the Veteran has already been separately service-connected for erectile dysfunction, which is addressed in further detail below.

The Veteran’s service-connected prostate cancer, status post radical prostatectomy, is rated under Diagnostic Code 7528, which governs ratings of malignant neoplasms of the genitourinary system and allows for the assignment of a temporary 100 percent rating until there is cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure. 38 C.F.R. § 4.115b, Diagnostic Code 7528. A mandatory VA examination is to be conducted at the expiration of six months. Any change in rating based upon that or any subsequent examination shall be subject to the provisions of 38 C.F.R. § 3.105 (e). If there has been no local reoccurrence or metastasis, the condition is to be rated on residuals as voiding dysfunction or renal dysfunction, whichever is predominant. 38 C.F.R. § 4.115b, Diagnostic Code 7528, Note. 

Voiding dysfunction is rated as urine leakage, urinary frequency, or obstructed voiding. 38 C.F.R. § 4.115a. Where a diagnostic code refers to the criteria for a voiding dysfunction, only the predominant area of dysfunction shall be considered for rating purposes. 38 C.F.R. § 4.115a. 

Under the criteria for voiding dysfunction manifested by urine leakage, a 20 percent rating is warranted for urine leakage requiring the wearing of absorbent materials which must be changed less than 2 times per day; a 40 percent rating is warranted for requiring the wearing of absorbent materials which must be changed 2 to 4 times per day; and a maximum 60 percent is warranted for requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day.

Under the criteria for voiding dysfunction manifested by urinary frequency, a 10 percent rating is warranted for daytime voiding interval between two and three hours, or; awakening to void two times per night. A 20 percent rating is warranted for daytime voiding interval between one and two hours, or; awakening to void three to four times per night. A maximum 40 percent rating is warranted for daytime voiding interval of less than one hour, or; awakening to void five or more times per night.

Here, the Veteran’s adenocarcinoma of the prostate has been in remission following a robotic radical prostatectomy in 2011. Accordingly, a 100 percent rating, temporary or otherwise, may not be assigned for the treatment under Diagnostic Code 7528. Rather, the focus is on the nature and severity of all residuals.

The Veteran was provided with a VA Prostate Cancer examination in June 2017, at which time he was diagnosed as having adenocarcinoma of the prostate which was in remission following a robotic radical prostatectomy in 2011. It was indicated that this prostatectomy caused voiding dysfunction resulting in urine leakage that required absorbent material which must be changed more than four times per day. The voiding dysfunction also resulted in increased urinary frequency, with daytime voiding intervals between one and two hours, and nighttime awakening to void five or more times. The voiding dysfunction also caused signs or symptoms of obstructed voiding, resulting in hesitancy (but not marked hesitancy) and slow stream (but not markedly slow stream), but with no other obstructive symptoms. The voiding dysfunction did not require the use of an appliance, and the Veteran did not have a history of recurrent symptomatic urinary tract or kidney infections. There was no evidence of renal dysfunction due to the condition. Furthermore, the Veteran’s prostatectomy scars did not exhibit a total area equal to or greater than 39 square centimeters (6 square inches); were not located on the head, face or neck; and were not unstable. The VA examiner concluded that the Veteran would be able to function fulltime in a desk-work environment near a bathroom. 

As there is no evidence renal dysfunction due to the Veteran’s prostate cancer, the Veteran’s residuals will be evaluated under voiding dysfunction. The Veteran’s voiding dysfunction resulted in daytime voiding intervals between one and two hours, and nighttime awakening to void five or more times. Accordingly, the Veteran is currently in receipt of the maximum schedular rating for voiding dysfunction associated with his prostate cancer residuals, which contemplates the wearing of absorbent materials which must be changed more than 4 times per day. The criteria for rating for obstructed voiding do not provide for a rating higher than 30 percent. As such, a rating in excess of 60 percent is not feasible. Additionally, the dimensions and characteristics of the Veteran’s prostatectomy scars do not warrant a separate compensable rating. 

Since the Veteran has been awarded the maximum schedular rating for voiding dysfunction, the Board finds that it must discuss the issue of entitlement to an extraschedular rating. See Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017); see also Yancy v. McDonald, 27 Vet. App. 484 (2016). The “determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b)(1) is a three-step inquiry.” Thun v. Peake, 22 Vet. App. 111, 115-116 (2008). If the RO or Board determines that (1) the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extraschedular rating is warranted. Id; see also 38 C.F.R. § 3.321(b)(1). Neither the AOJ nor the Board is permitted to assign an extraschedular rating in the first instance; rather, the matter must initially be referred to those officials who possess the delegated authority to assign such a rating. See Anderson v. Shinseki, 22 Vet. App. 423, 427-8 (2009); Floyd v. Brown, 9 Vet. App. 88, 96-97 (1996). 

In the present case, all of the Veteran’s symptomatology for his voiding dysfunction is fully addressed by the rating criteria under which such disability is rated, 38 C.F.R. § 4.115a. This is because the rating criteria contemplate wearing of absorbent materials which must be changed more than 4 times per day. Additionally, although a higher rating of 100 percent under Diagnostic Code 7528 is available for the Veteran’s prostate cancer, status post radical prostatectomy, the Veteran does not currently meet the criteria for that higher evaluation. Because the rating criteria reasonably describe the claimant’s disability level and symptomatology for his voiding dysfunction, the Veteran’s disability picture is contemplated by the Rating Schedule, such that the assigned 60 percent schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008). And although the Veteran’s voiding dysfunction interferes with his employment, such interference is contemplated by the 60 percent schedular rating criteria for which he has been granted for his disability. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. In short, there is no unusual or exceptional disability picture that would render impractical the application of the normal Rating Schedule. In the present case, the first threshold step of Thun is not met, in that the available schedular criteria for the voiding dysfunction associated with prostate cancer are adequate to rate all of the Veteran’s symptoms. Thus, there is no need to consider whether there are “related factors” such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board’s finding that the rating criteria were adequate to evaluate the claimant’s disability was a sufficient basis for denying extra-schedular consideration without regard to whether there was marked interference with employment); Doucette v. Shulkin, 38 Vet. App. 366 (2017) (if Thun element one is not satisfied, the Board does not need to analyze Thun element two). In conclusion, the Board finds that referral for an extraschedular evaluation for the Veteran’s service-connected prostate cancer, status post radical prostatectomy, under the provisions of 38 C.F.R. § 3.321(b)(1), is not warranted. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008). 

3. Erectile Dysfunction

As indicated above, the Veteran is separately service connected for erectile dysfunction associated with his prostate cancer residuals, and also seeks a higher evaluation for that disability. The Veteran's erectile dysfunction is currently evaluated as noncompensable and rated by analogy under 38 C.F.R. § 4.115b, Diagnostic Codes 7599-7522 for penis, deformity, with loss of erectile power. 

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. See 38 C.F.R. § 4.31. Under Diagnostic Code 7522, in order for the Veteran to receive a 20 percent rating for erectile dysfunction, physical deformity of the penis with loss of erectile power is required. 38 C.F.R. § 4.115b. A footnote to Diagnostic Code 7522 also indicates the disability is to be reviewed for entitlement to special monthly compensation (SMC) for loss of use of a creative organ under 38 C.F.R. § 3.350 (a). In this case, the Veteran is in receipt of SMC for loss of use of a creative organ. 

The VA Adjudication Procedure Manual confirms that two requirements must be met before a 20 percent evaluation can be assigned for deformity of the penis with loss of erectile power under Diagnostic Code 7522: (1) the deformity must be evident, and (2) the deformity must be accompanied by loss of erectile power. In sum, the condition is not compensable in the absence of penile deformity. See M21-1, Part III, Subpart iv, Chapter 4, Section I, Paragraph 3.b. The Veteran is seeking a compensable evaluation for his erectile dysfunction. 

Here, the Veteran’s erectile dysfunction was evaluated during the course of his June 2017 VA Prostate Cancer examination. The VA examiner indicated that the Veteran suffered from erectile dysfunction as a result of his 2011 robotic radical prostatectomy. The VA examiner also indicated that the Veteran was unable to achieve an erection sufficient for penetration and ejaculation even with medication, but that he did not suffer from retrograde ejaculation. As the evidence shows that the Veteran’s current erectile dysfunction was caused by his prostatectomy, and he has not alleged having a physical deformity of the penis, the Board concludes that the Veteran does not meet the criteria for a 20 percent rating under Diagnostic Code 7599-7522. In this case, the Veteran clearly has loss of erectile power. However, the lay and medical evidence of record does not reveal any physical deformity of the Veteran's penis. Accordingly, there is no lay or medical support for a compensable evaluation for the Veteran's erectile dysfunction under Diagnostic Code 7522. As such, the preponderance of the evidence is against the appeal for a compensable evaluation, and the appeal is denied.

4. Residuals of Incisional Hernia, Status Post Surgical Correction

The Veteran also seeks entitlement to a compensable evaluation for residuals of incisional hernia, status post surgical correction. The Board acknowledges that the Veteran is also separately service-connected for bowel obstruction, status post abdominal surgery, which is addressed in the Remand section below. 

The disability is currently rated under Diagnostic Codes 7805-7339. Diagnostic Code 7805 is for rating scars based on disabling effects (associated functional impairment) not considered under Diagnostic Codes 7800-7804. 38 C.F.R. § 4.118.

Diagnostic Code 7339 is for rating postoperative residuals of a ventral hernia. Under Diagnostic Code 7339, a noncompensable rating is assigned for healed postoperative wounds with no disability and when the use of a belt is not indicated. A 20 percent rating is assigned when the hernia is small and not well supported by a belt under ordinary conditions, or when there is a healed ventral hernia or post-operative wounds with weakening of the abdominal wall and indication for a supporting belt. A 40 percent rating is for assignment for a large ventral hernia not well supported by a belt under ordinary conditions. A maximum 100 percent rating is warranted for a massive, persistent ventral hernia with severe diastasis of recti muscles or extensive diffuse destruction or weakening of muscular and fascial support of the abdominal wall so as to be inoperable.

Here, the Veteran was provided with a VA Hernias examination in June 2017, at which time he was diagnosed as having an incisional hernia. It was indicated that the Veteran had been hospitalized in 2016 and 2017 for partial small bowel obstruction due to adhesions from incisional hernia repair in 2013. A hernia was no longer detected, and there was no indication for a supporting belt. Furthermore, the Veteran’s hernia repair scars did not exhibit a total area equal to or greater than 39 square centimeters (6 square inches); were not located on the head, face or neck; and were not unstable. 

As the Veteran did not demonstrate a small hernia not well supported by a belt under ordinary conditions nor a healed ventral hernia or post-operative wounds with weakening of abdominal wall and indication for a supporting belt, the Board finds that he is not entitled to a 20 percent rating pursuant to Diagnostic Code 7339. Additionally, the dimensions and characteristics of the Veteran’s hernia scars do not warrant a separate compensable rating. Accordingly, there is no lay or medical support for a compensable evaluation for the Veteran’s residuals of incisional hernia under Diagnostic Code 7339. As the preponderance of the evidence is against the appeal, it is denied.

REASONS FOR REMAND

The Veteran also seeks entitlement to a disability evaluation in excess of 10 percent for bowel obstruction, status post abdominal surgery; entitlement to an earlier effective date for the award of SMC by reason of being housebound due to service-connected disabilities, awarded from June 22, 2017, to August 1, 2017; and entitlement to a TDIU. Unfortunately, the Board finds that additional development is necessary before these claims can be adjudicated on the merits. 

The Veteran was granted entitlement to service connection for bowel obstruction, status post abdominal surgery, and assigned a 10 percent evaluation in an August 2017 Rating Decision on the basis of a June 2017 VA Hernias examination that found it was at least as likely as not that his intermittent small bowel obstruction was the result of his incisional hernia repair following robotic radical prostatectomy. Significantly, the June 2017 VA Hernias examination did not assess the severity of symptoms associated with the Veteran’s bowel obstruction. In November 2017, the Veteran submitted a Notice of Disagreement arguing that the symptomatology associated with his service-connected bowel obstruction was worse than currently rated. 

Under Diagnostic Code 7319, a 10 percent evaluation is warranted for moderate irritable colon syndrome manifested by frequent episodes of bowel disturbance with abdominal distress, while a maximum 30 percent evaluation requires severe irritable colon syndrome manifested by diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal distress. 38 C.F.R. § 4.114, DC 7319. Additionally, under Diagnostic Code 7301, a 50 percent evaluation is warranted for severe peritoneum adhesions; definite partial obstruction shown by X-ray, with frequent and prolonged episodes of severe colic distension, nausea or vomiting, following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage.

The record contains conflicting accounts of the Veteran’s bowel symptomatology. Private treatment records from ProHealth Care Medical Associates dated in October 2017 and March 2018 reported alternating constipation and diarrhea. However, in its November 2018 RAMP Rating Decision, the RO indicated that an April 2018 treatment report from the Milwaukee VA Medical Center in Milwaukee, Wisconsin, indicated normal appetite and bowels, with no nausea, vomiting, diarrhea or constipation. Crucially, a review of the record indicates that the April 2018 VA treatment records referenced by the RO in its November 2018 RAMP Rating Decision have not been associated with the claims file. As such, the Board finds that this constitutes a duty to assist error under 38 C.F.R. § 3.159(c)(2) which existed at the time of the appealed November 2018 RAMP Rating Decision. See Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical treatment records are deemed to be in VA’s constructive possession).

Additionally, given the Veteran’s contentions of more severe symptomatology, supported by private treatment records, the Board finds that this also constitutes a duty to assist error under 38 C.F.R. § 3.159(c)(4) which existed at the time of the appealed November 2018 RAMP Rating Decision. On remand, the Veteran should be provided with a VA examination for the purpose of determining the current nature and severity of the symptomatology associated with his service-connected bowel obstruction, status post abdominal surgery.

The issues of entitlement to an earlier effective date for the award of SMC by reason of being housebound due to service-connected disabilities as well as entitlement to TDIU are inextricably intertwined with the other issue being remanded herein. As such, they must be remanded, too, pending completion of the other development directed herein and readjudication of the other remanded issue.

The matters are REMANDED for the following action:

1. Undertake appropriate development to obtain any outstanding records pertinent to the Veteran’s remaining claims, to include the April 2018 treatment report from the Milwaukee VA Medical Center in Milwaukee, Wisconsin, referenced in the November 2018 RAMP Rating Decision. If any requested records are not available, then the record should be annotated to reflect such and the Veteran notified in accordance with 38 C.F.R. § 3.159(e).

2. Then, provide the Veteran with a VA examination by an examiner with sufficient expertise to fully assess the severity of his service-connected bowel obstruction, status post abdominal surgery. All pertinent evidence of record should be made available to and reviewed by the examiner. Any indicated studies should be performed. Ensure the examiner provides all information required for rating purposes under Diagnostic Code 7319. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary, he or she should be directed to clearly explain why that is so.

 

U. R. POWELL

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Anthony M. Flamini, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.