# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-2240

ROBERT A. ANDERSON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Motion for Panel Decision

(Argued August 28, 2008          Decided   March 13, 2009)

*Todd M. Wesche* of Richmond, Virginia, and *Daniel G. Krasnegor*, of Charlottesville, Virginia, for the appellant.

*Robert Schneider*, with *R. Randall Campbell*, Assistant General Counsel, and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, HAGEL and SCHOELEN, *Judges*.

GREENE, *Chief Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed a concurring opinion.

GREENE, *Chief Judge*: In an April 30, 2008, single-judge decision the Court affirmed an April 4, 2006, decision of the Board of Veterans' Appeals (Board) that denied veteran Robert A. Anderson a disability rating higher that 10%, including an extraschedular rating, for his VA service-connected bilateral hearing loss.  On May 21, 2008, Mr. Anderson filed, through counsel, a timely motion for reconsideration or, in the alternative, a panel decision.  The Court granted Mr. Anderson's motion for a panel decision and heard oral argument on the matter.  The April 30, 2008, decision is hereby withdrawn and this opinion is issued in its place.  Because the Board did not fully consider the relevant evidence in the record, and thus, failed to provide an adequate statement of reasons or bases for its determination, the April 2006 decision will be vacated and the matter remanded for readjudication.

# I. BACKGROUND

Mr. Anderson served in the U.S. Army from May 1944 to October 1946, and from November 1950 to April 1952. Record (R.) at 16-17. In November 2002, a VA regional office (RO) awarded him service connection for bilateral hearing loss with a 10% disability rating. R. at 28-34, 123-24. Mr. Anderson disagreed with the 10% rating assigned, and in June 2004 he met with a VA decision review officer (DRO). R. at 128-31. The DRO reported that during that conference he and Mr. Anderson discussed the applicability of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) to Mr. Anderson's claim. Mr. Anderson agreed to provide a statement detailing how his hearing loss caused marked interference with employment that would be submitted to the "VA Central Office for extraschedular evaluation." R. at 228. In a July 2004 letter, Mr. Anderson stated that he believed that his hearing loss caused him to retire from his job at a telephone company with less than full pension in 1977, and that his hearing loss adversely affected his work as a real estate agent from 1978 to 1984. R. at 236-38. He further stated that in 1984 he applied for Social Security benefits and from that time until 1997, he worked as a property manager. R. at 238. In September 2004, Mr. Anderson's claim was referred to the Director of the Compensation and Pension Service (C&P) for consideration of an extraschedular rating. R. at 244.

In March 2005, the Director of C&P, after reviewing Mr. Anderson's claims file, his medical complaints, and his work history, issued a letter decision that discussed Mr. Anderson's entitlement to an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1). R. at 249. In the letter, the Director of C&P related that Mr. Anderson had "worked for many years for a telephone company," and that "his hearing loss had a great impact on his career." *Id.* Specifically, the Director of C&P noted that Mr. Anderson's hearing loss had "prevented him from advancement and shortened his career to the point he had to retire in 1977, at age 51." *Id.* The Director of C&P also reported that, despite his new hearing aids, Mr. Anderson was "unable to participate in conversations with his friends, cannot answer or use the phone unless his wife helps him out on the other line, and is unable to understand the dialogue of speakers, newscasters and actors whether it is on the radio, television, church, or theater." *Id.* Ultimately, the Director of C&P concluded:

> [A]n extra schedular evaluation is assigned where normal schedular evaluations are found to be inadequate to compensate for impairment of earning capacity. The veteran has not worked in over 30 years. As available medical records show the

veteran's hearing loss is not so severe as to interfere with his ability to be gainfully employed, this Service finds that entitlement to an extra-schedular evaluation is not warranted.

*Id*. The matter was then returned to the RO and in March 2005 the RO determined that the rating schedule for evaluating hearing loss was adequate to assess Mr. Anderson's disability and that the evidence did not show that his disability interfered with his ability to be gainfully employed. R. at 271-73. Mr. Anderson appealed to the Board, arguing that his hearing loss forced him to leave his job in 1977 and disagreeing with the agency finding that his hearing loss did not interfere with his employment.

In April 2006, the Board affirmed the RO determination awarding a disability rating of 10%. R. at 1-15. The Board discussed the March 2005 letter from the Director of C&P and the March 2005 RO decision denying entitlement to an extraschedular rating. The Board found that "there is no showing that the veteran's hearing loss has caused *marked* interference with employment (*i.e.*, beyond that contemplated in the assigned 10[%] rating)." R. at 12 (emphasis in original). This appeal followed.

## II. LAW AND ANALYSIS

Veterans with disabilities resulting from personal injury sustained or disease contracted during active service and in the line of duty are entitled to service-connected benefits. *See* 38 U.S.C. § 1110. Once a disability has been found to be service connected, VA applies the criteria established in diagnostic codes (DCs) contained in the VA rating schedule to assign a disability rating. *See* 38 C.F.R. § 3.321(a) (2008). The degrees of disability for bilateral service-connected hearing loss are reflected in eleven auditory acuity levels in the rating schedule. *See* 38 C.F.R. § 4.85, DCs 6100-6110 (2008). Disability ratings for hearing loss are derived from the mechanical process of applying the rating schedule to the specific numeric scores assigned by audiology testing. *Lendenmann v. Principi,* 3 Vet.App. 345, 349 (1992).

Generally, evaluating a disability using either the corresponding or analogous DCs contained in the rating schedule is sufficient. *See* 38 C.F.R. §§ 4.20 and 4.27 (2008). For exceptional cases,

VA has authorized the assignment of extraschedular ratings and provided the following guidance for awarding such ratings:

> To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, [C&P], upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra[]schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1). As the Court recently explained in *Thun*, a "determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry." *Thun v. Peake*, 22 Vet.App. 111, 115 (2008). If the RO or Board determines that (1) the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extraschedular rating is warranted. *Id*. Neither the RO nor the Board is permitted to assign an extraschedular rating in the first instance; rather the matter must initially be referred to those officials who possess the delegated authority to assign such a rating. *See Floyd v. Brown*, 9 Vet.App. 88, 95 (1996).

As with all matters adjudicated by the Board, a Board decision concerning an extraschedular rating must include a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

Mr. Anderson argues that the Board exceeded its jurisdiction by overturning DRO findings that were favorable to his claim. Alternatively, he argues that the statement of reasons or bases provided for the Board's decision to deny him an extraschedular rating is inadequate because the Board ignored evidence that his service-connected hearing loss prevented him from advancing in his preferred career at a telephone company and caused him to quit several jobs.

In the decision on appeal, the Board acknowledged that the matter of an extraschedular rating for Mr. Anderson's bilateral hearing loss initially had been submitted to the Director of C&P for extraschedular consideration, who determined that Mr. Anderson's disability did not warrant an extraschedular evaluation. R. at 11. In its review, the Board agreed with the Director of C&P and specifically found:

> [T]here is no showing that [Mr. Anderson's] hearing loss has caused marked interference with employment (*i.e.*, beyond that contemplated in the assigned 10[%] rating) or has required any–much less, frequent–hospitalizations. In the absence of such factors, or other factors demonstrating that this case involves [an] exceptional or unusual disability picture so as to render impracticable application of the regular schedular standards, the criteria of 38 C.F.R. § 3.321(b)(1) for the assignment of an extraschedular evaluation simply have not been met. . . . To the extent [Mr. Anderson] may experience functional impairment due to his service[-]connected hearing loss, the Board finds that such impairment is contemplated in the 10[%] rating assigned to this disability.

R. at 12.

### A. Scope of Board's Review of Extraschedular Rating Denial

Mr. Anderson's argument that the Board exceeded its jurisdiction is based on his belief that the DRO's referral of his claim to the Director of C&P evinces two implicit favorable findings: (1) The schedular rating for his bilateral hearing loss was inadequate, and (2) the § 3.321(b)(1) related factors for an extraschedular rating were established as present in his disability picture. He asserts that there is no entity in VA that has the authority to revisit those implicit favorable findings and that, once those findings have been made, the Director of C&P must award the benefit of an extraschedular rating.[1] Mr. Anderson asserts that it is the unfavorable findings in the Director of

---

[1] The Court notes that 38 C.F.R. § 3.321(b)(1) also authorizes the Under Secretary for Benefits to approve an extraschedular rating. Because this particular case was sent to the Compensation and Pension Service we will continue to refer to that entity, mindful that our analysis would be identical if the Under Secretary for Benefits had been implicated instead.

C&P's letter, concluding that an extraschedular rating is not warranted, that he has appealed to the Board. Accordingly, he argues that the Board's analysis of the factors presented in the DRO's decision to submit his claim for § 3.321(b)(1) extraschedular consideration was outside the scope of his appeal, and thus, beyond the Board's jurisdiction.

We do not agree that the Board exceeded its jurisdiction. First, the Court notes that the present case differs procedurally from *Thun, supra*. In *Thun*, the appellant was challenging a finding by the Board that he had not met the requirements for referral for extraschedular consideration. Thus, the issue analyzed by the Court in *Thun* was whether the Board erred in determining that the threshold requirements for referral for extraschedular consideration had not been met. Although the Court discussed the process of determining whether a referral was appropriate in terms of "steps," the Court did not hold that initial findings with respect to those steps were final and binding on the Director of C&P, the RO, or the Board. Mr. Anderson misinterprets the three-step inquiry announced in *Thun* by attempting to elevate each step into a final and binding agency decision. *See* 22 Vet.App. at 115 ("determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry"). To the extent that the use of the term "steps" as it is used in *Thun* is misleading and led to Mr. Anderson's interpretation, we clarify that the steps are, in fact, elements that must be established before an extraschedular rating can be awarded and that they are reviewable by the Board.

Second, although the Board is precluded from initially assigning an extraschedular rating, there is no restriction on the Board's ability to review the denial of an extraschedular rating on appeal. *See Floyd,* 9 Vet.App. at 96-97 (stating that once Board properly refers an extraschedular rating issue to Director of C&P for review, appellant may "continue[] to appeal the extraschedular rating aspect of this claim"); *see also* 38 U.S.C. §§ 511(a), 7104(a) ("All questions in a matter . . . subject to decision by the Secretary shall be subject to one review on appeal to the . . . Board."); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) ("Together [sections] 511(a) and 7104(a) dictate that the Board acts on behalf of the Secretary in making the ultimate decision on claims and provides 'one review on appeal to the Secretary' of a question 'subject to decision by the Secretary' under [section] 511(a)."). Section 7104, unlike the Court's jurisdictional statute, contains no limitations on the Board's ability to review favorable findings.

6

*Compare* 38 U.S.C. § 7104(a) *with* 38 U.S.C. § 7261(a)(4). Indeed, the Board is permitted to review the entirety of the proceedings below. 38 U.S.C. § 7104(a) (The Board's review is "based on the entire record in the proceeding and upon consideration of all evidence and material of record"). It follows that the Board has jurisdiction to review whether the decision not to award an extraschedular rating was appropriate under all three elements set forth in *Thun*. *See* 22 Vet.App. at 116; 38 C.F.R. § 3.321(b)(1).

Third, the findings made by the DRO, implied by the act of referring Mr. Anderson's claim for extraschedular consideration or otherwise, are not binding on the Director of C&P and, in turn, are not binding on the Board on appeal. As explained above, in relying on *Thun* to support his contention, Mr. Anderson misinterprets the three-step inquiry for extraschedular consideration and mistakenly attempts to elevate each step into a final and binding decision. *See* 22 Vet.App. at 115 ("determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry"). It is the Director of C&P who is authorized to approve an extraschedular rating on the basis of the criteria set forth in 38 C.F.R. § 3.321(b)(1). To not allow that individual to either affirm or reject the bases for the submission of the claim for extraschedular consideration, as Mr. Anderson and our concurring colleague suggest, overlooks the specific regulatory authority of the Director of C&P "to approve" extraschedular awards and contradicts the substantial emphasis the Court has placed on the requirement that extraschedular consideration, in the first instance, must be done by one of the individuals specified in § 3.321(b)(1). *See Floyd*, 9 Vet.App. at 95; *see also Thun*, 22 Vet.App. at 116 (Director of C&P determines whether, to accord justice, claimant's disability picture requires extraschedular rating); *Bagwell v. Brown*, 9 Vet.App. 337, 339 (1996) (in first instance, Board is limited to determining whether submission for extraschedular consideration is appropriate). Moreover, we disagree with our concurring colleague's designation of the RO as the exclusive entity for performing the fact finding necessary to assess the claimant's level of disability and symptomatology and the adequacy of the rating schedule given that the regulation expressly provides for the RO to seek an advisory opinion on these matters. *See* 38 C.F.R. § 3.321(c) ("Cases in which application of the schedule is not understood or the propriety of an extra[]schedular rating is questionable may be submitted to [the] Central Office for advisory opinion."). Indeed, even when a case is submitted for extraschedular consideration under

§ 3.321(b)(1), the analysis performed by the RO or Board is done for the limited purpose of determining whether *referral* of the matter for extraschedular consideration is warranted. *See Floyd, supra.* The actual review of the matter and approval of an extraschedular rating is done for the first time by the Director of C&P. 38 C.F.R. § 3.321(b)(1); *see Thun*, 22 Vet.App. at 115; *Floyd*, *supra*.

In this case, Mr. Anderson's claim was referred to the Director of C&P, who then determined that an extraschedular rating was not warranted because the record did not establish that Mr. Anderson's hearing loss was so severe as to interfere with his ability to be employed. The RO then effected that finding by issuing a rating decision denying entitlement to an extraschedular evaluation based on the letter from the Director of C&P. The Board's review of the RO's decision that Mr. Anderson is not entitled to a hearing loss rating greater than 10% included a review of whether an extraschedular rating was warranted. *See Barringer v. Peake*, 22 Vet.App. 242, 243-44 (2008) ("The question of an extraschedular rating is a component of a claim for an increased rating.") (citing *Bagwell*, 9 Vet.App. at 339). In exercising its appellate authority, the Board then determined that there was no error in the finding below that an extraschedular evaluation was not warranted because the evidence failed to show that the rating schedule was inadequate or that there was marked interference with employment. R. at 12. Accordingly, the Court holds that the Board did not exceed its jurisdiction when it determined that Mr. Anderson was not entitled to an extraschedular evaluation for his bilateral hearing disability. *See Thun*, 22 Vet.App. at 115; 38 C.F.R. § 3.321(b)(1).

### B. Board's Adjudication of Extraschedular Evaluation

Mr. Anderson further argues that to the extent it was appropriate for the Board to review the factors concerning whether an extraschedular rating was warranted, the Board failed to provide an adequate statement of reasons or bases for its determination. The Board found that an extraschedular rating was not appropriate after finding that the functional impairments of Mr. Anderson's bilateral hearing loss were contemplated by his schedular 10% disability rating. R. at 10-11. Mr. Anderson argues that this finding amounts to a denial of an extraschedular rating on the basis that his disability picture does not meet the initial threshold for establishing that an extraschedular rating is warranted. *See Thun*, 22 Vet.App. at 118 ("[I]n cases regarding whether extraschedular referral is warranted, the threshold determination is whether the disability picture presented in the record is adequately contemplated by the rating schedule.").

8

Although, as mentioned above, the propriety of the decision on all elements leading to an extraschedular rating is within the Board's purview, here the Board's analysis lacked an articulation of the actual symptoms and functional impairments alleged by Mr. Anderson. *See* R. at 1-13. The Board noted that Mr. Anderson had not worked in over 30 years at the telephone company but the Board failed to discuss his statements throughout the record asserting that his hearing loss resulted in difficulty with communicating with others in work and social conversations, including his employment as a real estate agent from 1978 to 1984, and in property maintenance from 1984 to 1997. R. at 11; *see* R. 236-38, 290-91. Because the Board's description of Mr. Anderson's disability picture presented by the record is incomplete, its analysis of whether that disability picture is adequately contemplated by the rating schedule is necessarily flawed.[2] *See Thun*, *supra*. Accordingly, the Board's decision that Mr. Anderson's service-connected condition does not warrant an extraschedular evaluation is not supported by an adequate statement of reasons or bases to facilitate the Court's review and remand is appropriate. *See Allday* and *Gilbert*, both *supra*; *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand appropriate when Board, inter alia, fails to provide adequate statement of reasons or bases); *see also Floyd*, 9 Vet.App. at 96-97 ("If the Board does proceed in compliance with the correct regulatory procedures and the appellant then continues to appeal the extraschedular rating aspect of this claim, the Board will be required to articulate its findings of fact and sufficient reasons or bases thereupon on the extraschedular consideration issue."). On remand, Mr. Anderson may present any additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi,* 16 Vet.App. 529, 534 (2002).

---

[2] Mr. Anderson's statements that his hearing loss disability caused a loss of hypothetical employment advancement opportunities and an inability to work in his preferred career field (*see* Appellant's Brief at 6-7) have little relevance to the threshold inquiry into the adequacy of the rating schedule for his actual level of disability and symptomatology for 38 C.F.R. § 3.321. *Cf. Thun*, 22 Vet.App. at 117 n.3 (loss of income is not relevant to threshold determination of adequacy of schedular rating). Moreover, to the extent that Mr. Anderson argues that he is entitled to an extraschedular rating because his hearing loss resulted in *unemployability*, that is an argument relating to a rating of total disability based on individual unemployability (TDIU), a matter that is not before the Court at this time. *See* 38 C.F.R. §§ 4.15, 4.16 (b) (2008) (all veterans who are unemployable by reason of service-connected disability shall be rated totally disabled); *see also Kellar v. Brown,* 6 Vet.App. 157 (1994) (evaluations regarding employability in § 4.16 and interference with employment contained in § 3.321(b)(1) are different metrics); *Stanton v. Brown*, 5 Vet.App. 563, 564-70 (1993) (issue of extraschedular rating is separate from issue of TDIU rating).

## III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Board's April 4, 2006, decision is VACATED and the matter is REMANDED for readjudication.

SCHOELEN, *Judge*, concurring:  Although I concur in the majority's ultimate holding, I respectfully dissent from the part of the decision that discusses the respective roles of the Director of C&P and the RO in cases meriting extraschedular consideration.  The majority adopted the Secretary's position at oral argument that the Director of C&P is authorized to review whether the RO or the Board appropriately referred the appellant's case for extraschedular consideration–in effect, the analysis required by *Thun* steps 1 and 2.  *See Thun v. Peake*, 22 Vet.App. 111, 115-16 (2008).  I believe that the Secretary's interpretation of the C&P director's province in this respect is inconsistent with 38 C.F.R. § 3.321(b)(1) (2008), and therefore is entitled to little, if any, deference. *See Auer v. Robbins,* 519 U.S. 452, 461 (1997) (confirming that an agency's  interpretations of its own regulations is "controlling unless 'plainly erroneous or inconsistent with the regulation'") (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359 (1989));  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (declining to defer to "agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice").

As this Court noted in *Floyd v. Brown*, "the determination involving an increased disability rating on an extra[]schedular basis is subject to the procedural requirements laid out in 38 C.F.R. § 3.321(b)(1)." *Floyd*, 9 Vet.App. 88, 95 (1996).  To begin, the RO or Board must determine that the "schedular evaluations are . . . inadequate." 38 C.F.R. § 3.321(b)(1); *see Floyd,* 9 Vet.App. at 95 (holding that § 3.321(b)(1) allows the Board to "consider[] whether *referral* to the appropriate first-line officials is required") (emphasis omitted) (emphasis added).  As the Court explained in *Thun,* such determination by the Board or RO involves a two-step inquiry. *Thun*, 22 Vet.App at 115-116.  First, the RO or the Board must compare "the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Id.* at 115.  Second, "if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as 'governing norms.'" *Id.* at 115-16; *accord Floyd*, 9 Vet.App. at 97 ("As

10

written, 38 C.F.R. § 3.321 provides a criterion ('an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards') for determining whether extra[]schedular *consideration* is warranted.") (emphasis added).

"Where the schedular evaluations are found to be inadequate," the RO or Board must then submit the case to the Director of C&P. 38 C.F.R. § 3.321(b)(1); *Floyd,* 9 Vet.App. at 95 ("[T]he correct course of action for the Board in extra[]schedular consideration cases such as this one is to raise the issue and remand it for the proper procedural actions outlined in 38 C.F.R. § 3.321(b)(1)."). I see nothing in the regulation to enable the Director of C&P to question whether the RO or Board properly found the schedular evaluations to be inadequate. Instead, upon submission by the RO or Board, the Director of C&P is authorized only to "approve . . . an extra[]schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability." 38 C.F.R. § 3.321(b)(1). As the *Floyd* Court explained, "38 C.F.R. § 3.321(b)(1) acts as a funnel to channel requests for an extra[]schedular rating through certain officials who possess the delegated authority to *assign* such a rating." *Floyd*, 9 Vet.App. at 95.

Such delegation of authority is appropriate, given the respective roles of the Director of C&P and the RO and the Board in adjudicating claims for VA benefits. Specifically, the Director of C&P has been delegated the authority to draft the rating schedule, based "as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C. §1155; *see also* 38 U.S.C. § 501(a); 38 C.F.R. §§ 2.6(b)(1), 3.100 (2008). The Director of C&P's expertise is in determining the average earning capacity impairment due exclusively to the service-connected disability. *See* 38 C.F.R. § 3.321(b)(1). This makes the Director of C&P uniquely suited to determining what extraschedular rating level is warranted. On the other hand, the RO and the Board have expertise in applying the facts of each respective case to the rating schedule. *See Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007) (holding that it is the job of a rating examiner to interpret medical reports of record and determine "[h]ow [the appellant's] disabilities translate into a potentially compensable disability"); 38 U.S.C. §§ 511, 7104, 7703; 38 C.F.R. §§ 4.1 ("This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service."), 4.2 ("It is the responsibility of

the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present."), 4.7 ("Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating."), 20.101(a) (2008) ("[T]he Board is bound by applicable statutes, the regulations of the Department of Veterans Affairs and precedent opinions of the General Counsel of the Department of Veterans Affairs."); *see also Bernard v. Brown,* 4 Vet.App. 384, 390 (1993) ("Under the governing statutes and regulations, the Board's jurisdiction is limited to deciding questions in 'appeals' of decisions by the Secretary or his delegates.") (citing 38 U.S.C. § 7104)). Unlike the Director of C&P, it is the province of the RO and Board to engage in fact-finding in the first instance, which makes them the best entities within VA to assess the claimant's level of disability and symptomatology and to determine whether the schedular evaluation contemplates those symptoms, and whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." *Hensley v. West,* 212 F.3d 1255, 1263 (2000) (citing 38 U.S.C. § 7261(a)(4), (c)); *see also Thun,* 22 Vet.App. at 115; *Moore*, 21 Vet.App. at 219 ("Rating specialists determine, through the rating schedule, the effect of a disability on a claimant's ability to earn a living."). By sanctioning the Director of C&P's analysis of the factors already considered by the RO or Board, the majority effectively transforms the Director of C&P into a fact-finder.

Further, authorizing the Director of C&P to overrule the Board's findings with respect to the adequacy of the schedular evaluations would frustrate the Board's appellate authority. *See* 38 U.S.C. § 7104(a). Similarly, if the Director of C&P is able to set aside the RO's findings with respect to the first two *Thun, supra,* steps, the RO would be handcuffed in its ability to adequately compensate a veteran. *See* 38 C.F.R. § 4.2.

I would hold that the Secretary's position in this respect is inconsistent with both administrative practice and 38 C.F.R. § 3.321(b)(1); accordingly the Court is not required to defer to the Secretary's position. *See Auer* and *Georgetown Univ. Hosp.,* both *supra.* Therefore, I respectfully concur with the majority's decision, but not its discussion pertaining to the role of the Director of C&P.

12