﻿Citation Nr: AXXXXXXXX
Decision Date: 12/30/19 Archive Date: 12/30/19

DOCKET NO. 190513-15825
DATE: December 30, 2019

ORDER

Readjudication of the claim of entitlement to an initial rating in excess of 50 percent for migraine headaches on an extraschedular basis is warranted.

A rating in excess of 50 percent for migraine headaches on an extraschedular basis is denied.

FINDINGS OF FACT

1. New and relevant evidence was received after the April 2018 Board denial to warrant readjudication of the claim of entitlement to an initial rating in excess of 50 percent for migraine headaches on an extraschedular basis.

2. However, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected migraines is inadequate.

CONCLUSION OF LAW

1. The criteria for readjudicating the claim for of entitlement to an initial rating in excess of 50 percent for migraine headaches on an extraschedular basis have been met. 38 C.F.R. § 3.156(d).

2. The criteria for entitlement to an evaluation in excess of 50 percent on an extraschedular basis for migraine headaches have not been met. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.321, 4.124a, Diagnostic Code (DC) 8100.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active duty service in the United States Army from June 2001 to June 2005.

This case has a rather lengthy procedural history. For brevity sake, the Board will focus on the history from the decision on appeal and onwards.

In August 2017, the Board remanded the claim to have the Agency of Original Jurisdiction (AOJ) to refer to the Director of Compensation Services the question of whether the Veteran was entitled to an extraschedular rating for his service-connected migraines. To the extent the referral for an extraschedular rating by the Board in its remand was an initial finding, a remand by the Board is a preliminary order and does not constitute a final decision of the Board. Therefore, the Board’s findings in the August 2017 remand are not binding on the matter of entitlement to an extraschedular rating. 38 C.F.R. § 20.1100(b).

The Board notes that the decision on appeal is a Board decision, which was issued in April 2018, denying the claim for a rating in excess of 50 percent for migraine headaches on an extraschedular basis. The Board decision also granted a total disability rating based on unemployability (TDIU) based, at least in part, on the Veteran’s migraine headaches.

In November 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d). The Veteran selected the Supplemental Claim Lane when he opted in to the Appeals Modernization Act (AMA) review system when he timely appealed the April 2018 Board decision and requested to supplement the record with new and relevant evidence. The Veteran elected the supplemental claim lane rather than appealing the claim to the United States Court of Appeals for Veterans Claims (Court).

A January 2019 rating decision denied the Veteran’s claim for a rating in excess of 50 percent for migraine headaches on an extraschedular basis. He timely appealed this January 2019 rating decision to the Board in May 2019 and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The claim has been recharacterized to reflect the applicable evidentiary standard under AMA. 38 C.F.R. §§ 3.2501(a)(1), 19.2.

New and relevant evidence has been added to the claims file because evidence was received within one year of the April 2018 legacy Board decision, but the AOJ did not determine whether it was new and material. 38 C.F.R. § 3.156(b).

Consequently, the Board decision was not final when the Veteran elected the modernized review system pursuant to 38 C.F.R. § 19.2. The AOJ considered the merits of whether new and relevant evidence was submitted to readjudicate the claim for entitlement to an evaluation in excess of 50 percent for a migraine headache disability on an extraschedular basis in its January 2019 rating decision. 38 U.S.C. § 7104(a).

New and Relevant Evidence

VA will readjudicate a claim if new and relevant evidence is presented or secured. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. See 38 C.F.R. § 3.156(d).

The question in this case is whether the Veteran submitted evidence after the prior final denial of his claim in the legacy system, and if so, whether that evidence is new and relevant to his claims.

Indeed, the Board finds that the Veteran submitted new evidence after the final April 2018 Board decision that is relevant to the claim. Specifically, the Veteran submitted two copies of a September 2018 Airborne Hazard/Burn Pit Registry initial evaluation where the Veteran complained of daily headaches that renders him unable to work. He stated that he was on prescribed medication as well to control his symptoms. Additionally, VA records were added to the electronic claims file in November 2018 that reflects the Veteran sought treatment for an unrelated condition, but reflects that he was still prescribed Sumatriptan (Imitrex) for his migraine headaches in May 2018.

Therefore, readjudication of the claim for an evaluation in excess of 50 percent for a migraine headache disability on an extraschedular basis is warranted.

Extraschedular Evaluation

An evaluation in excess of 50 percent for a migraine headache on an extraschedular basis.

The Veteran contends that he is entitled to a rating in excess of 50 percent for his service-connected migraine headaches on an extraschedular basis as he frequently vomits when he experiences migraine attacks because of the pain. His headaches cause him to become nauseated to the point that he could not keep a steady job or stay in school with vocational rehabilitation. He gets blurred vision from his migraines and anxiety and is unable to maintain his composure from the pain. He continues to seek treatment at the VA hospitals for pain, but the medication is not strong enough. At times, he feels as though his migraines are very unusual and impractical. In other places in the record, he contends that his headaches occur daily and that they are so severe that he is unable to perform activities of daily living and must lay down in a dark room; sometimes he whole head hurts. He also contends that the most recent VA examiner did not adequately assess his migraines as he has flare-ups that impair his ability to function normally, which he asserts were not acknowledged by the VA in the April 2018 Board decision.

In an October 2016 rating decision, the Veteran was assigned an initial 50 percent rating for migraine headaches, the highest schedular rating available for migraines headaches under 38 C.F.R. § 4.124a, Diagnostic Code 8100. However, the Veteran continues to pursue the appeal for a rating in excess of 50 percent on an extraschedular basis. 

The Board finds that the evidence of record does not support favorable determination that the Veteran has an exceptional disability picture not contemplated by the rating schedule. For the reasons described below, the Board does not find that the criteria for such an increase have been met.

Extraschedular evaluations is only warranted pursuant to 38 C.F.R. § 3.321 in the “exceptional case where the schedular evaluation is inadequate.”

Under 38 C.F.R. § 3.321(b)(1), ratings shall be based, as far as practicable, upon the average impairments of earning capacity. To accord justice to the exceptional case where the schedular evaluation is inadequate to rate a single service-connected disability, the Director of Compensation Service or his or her delegate is authorized to approve on the basis of the criteria set forth in paragraph 38 C.F.R. § 3.321(b), an extra-schedular evaluation commensurate with the average impairment of earning capacity due exclusively to the disability. The governing norm in these exceptional cases is a finding by the Director of Compensation Service or delegatee that application of the regular schedular standards is impractical because the disability is so exceptional or unusual due to such related factors as marked interference with employment or frequent periods of hospitalization. See 82 Fed. Reg. 57,830 (Dec. 8, 2017) (revising 38 C.F.R. § 3.321(b)(1) to clarify that extraschedular evaluations are only warranted for a single service-connected disability, and not for the combined effect of two or more service-connected disabilities).

In Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff’d sub nom., Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009), the Court outlined the framework for determining entitlement to an extraschedular evaluation. First, the Board must determine whether the evidence “presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate.” Thun, 22 Vet. App. at 115. This obliges the Board to compare “the level of severity and symptomatology of the claimant’s service-connected disability with the established criteria found in the rating schedule for that disability.” Id. at 115. When this requirement is satisfied, the Board must then determine whether the Veteran’s exceptional disability picture exhibits other related factors such as “marked interference with employment” or “frequent periods of hospitalization.” Id. at 116 (quoting 38 C.F.R. § 3.321(b)(1)). If both these inquiries are answered in the affirmative, the Board must refer the matter to the Compensation Service Director for the third inquiry—a determination of whether, to accord justice, the Veteran’s disability picture requires the assignment of an extraschedular evaluation. Id. at 116; see generally Todd v. McDonald, 27 Vet. App. 79, 89-90 (2014); Anderson v. Shinseki, 22 Vet. App. 423, 427 (2009) (outlining the “elements that must be established before an extraschedular rating can be awarded”).

There is no restriction on the Board’s ability to review the adjudication of an extraschedular rating once the Director determines that an extraschedular rating is not warranted. Anderson, 22 Vet. App. at 427.

Under Diagnostic Code 8100, migraine headaches are assigned a 10 percent evaluation when they are manifested by characteristic prostrating attacks averaging one in two months over the last several months. 38 C.F.R. § 4.124a. A 30 percent evaluation is assigned when those characteristic prostrating attacks occur on average once a month over the last several months. Id. The highest schedular evaluation of 50 percent, however, is only assigned when migraines cause very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Id.

The Court has clarified that the phrase characteristic prostrating attacks “plainly describes migraine attacks that typically produce powerlessness or a lack of vitality.” Johnson v. Wilkie, 30 Vet. App. 245, 252 (2018).

Turning to the evidence of record, a review of the record demonstrates that the Veteran has complained of headaches since he was discharged from service in 2005. 

In a November 2005 VA examination, the Veteran complained of migraine headaches, occurring approximately once per month. His headaches are located over his right eye and lasted two days. He found it difficult to sleep when he had headaches but could continue to do his job and activities of daily living. 

Additional medical records reveal that the Veteran primarily used over-the-counter medicine like Excedrin or Tylenol for pain relief. He complained of pain on the right side of head, with blurred vision and light/noise sensitivity during headaches with associated vomiting. 

Since April 2007, he was prescribed divalproex for headaches and irritability. The Veteran also reported a history of being prescribed triptan and amitriptyline for migraine headaches. 

In an April 2008 VA examination report for an unrelated condition, the Veteran reported having headaches once a week that persisted for two to three days. He attempted to continue attending school during attacks, but sometimes he had to go and lie down in a dark room to get over the headache. He reported taking extra strength Tylenol.

An October 2011 VA examination report indicated that the Veteran had headaches from a few hours to several days. The Veteran stated that sometimes his whole head pounded. While he was not working at the time of the examination, he reported that when he last worked, he had to take at least two days off every two months. As a result of his symptoms, the VA examiner opined that the Veteran could not maintain employment because of his frequent headaches.

A November 2012 VA examination reflects the Veteran reported experiencing migraines with symptoms of dizziness, light sensitivity, loud noises, vision changes, and vomiting as well as pulsating or throbbing head pain and localized pain to one side of head. The Veteran stated that he had three to four severe headaches every week that included severe pounding type pain in the right temporal area that lasted up to five to six hours. The Veteran stated that he also had to lay down in a dark room and rest for relief. However, he stated that he only used Excedrin for pain relief. He stated he was not on any medications for migraine headaches to control symptoms.

The examiner rendered internally inconsistent opinion. The examiner opined the Veteran had no characteristics of prostrating attacks of migraine headache pain, but then, indicated that he had prostrating attacks more frequently than once per month. Later in the report, the examiner stated the Veteran’s headache condition did not impact his ability to work. The VA examiner opined that the Veteran is employable because he used over-the-counter medications.

In an August 2014 disability benefits questionnaire (DBQ), the Veteran’s VA provider listed similar symptoms, except that the Veteran now took prescribed Depakote for migraines. He stated the Veteran had characteristics of prostrating attacks of migraine headache pain that happen more frequently that once per month. Further, the Veteran had very frequent prostration and prolonged attacks of non-migraine headache pain. He opined that the migraines impact the Veterans’ ability to work in that he has to sometimes take off from work.

In November 2017, the case was referred to the Director of Compensation Services. In a January 2018 administrative review, the Director of Compensation Service (Director) reviewed the Veteran’s file and noted that he took prescription for his migraines but had no hospitalizations. The Director reviewed the findings of the VA examinations including their impact on employability. Further, this review examined the Veteran’s personnel folder and noted that in May 2012, the Veteran started vocational rehabilitation and was discharged to a work program in December 2014.

Occupationally, the evidence shows that the Veteran reported in September 2011 that he was doing well and wanted vocational rehabilitation because he was unemployed. The Veteran started school in 2012. However, by the fall of 2012 he had withdrawn from his classes In February 2013, he reported that he was working full time. However, the record shows the Veteran was discharged from the vocational rehabilitation program in July 2014 because had not participated since 2012.

Since the April 2018 Board decision denying his claim, the Veteran submitted a September 2018 Airborne Hazard/Burn Pit Registry initial evaluation where the Veteran complained of daily headaches. He stated he has several episodes of headaches and is unable to work due to medical problems. He was prescribed Sumatriptan (Imitrex) for his migraine headaches in May 2018.

Additionally, VA records were added to the claims file in November 2018 that reflects the Veteran complained of having daily headaches lasting three to four hours relieved with pain medication. 

With regard to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. The Veteran has been assigned the 50 percent rating for his disability, which contemplates “migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.” The schedular criteria in Diagnostic Code 8100 does not list numerous specific symptoms attributable to headaches or a checklist or illustrative sample of symptoms that are indicative of a particular disability evaluation. Rather, they focus on the severity, and frequency of the attacks that are produced by the headaches’ symptoms and, with respect to the 50 percent evaluation, the economic inadaptability productive of the attacks. Inherently, the criteria contemplate the potential of a wide range of symptoms; yet focuses on the specific functional effects of these headache-related symptoms in terms of whether and to what degree they are prostrating. As explained above, the Court has focused on the frequency with which the headache symptoms cause prostrating attacks that produce powerlessness or a lack of vitality and the extent to which any such attack renders a veteran entirely powerless.

Here, there are multiple competent statements that the Veteran’s headaches are accompanied by severe incapacitating pain, difficulties with concentration, light and noise-sensitivity, nausea, dizziness and blurred vision. He asserts that he not only has these daily headaches, but also flare-ups of a higher severity. As a result, for both baseline and flare-up headaches, he must lie down during and avoid light and sound. As such, it impossible for him to work or attend school. These symptoms and Veteran’s associated need to lie down appear to be directly related to the loss of vitality and powerlessness contemplated by the criteria’s focus on prostrating attacks. 

Collectively, the Board finds that these symptoms, and in particular the functional effect of these symptoms of causing a loss of vitality and powerlessness associated with the need to lie down, are specifically contemplated by the rating schedule. The 50 percent rating adequately contemplates the severity and frequency of the Veteran’s headaches and reasonably describes the Veteran’s disability level and symptomatology. 

To that end, it is not necessary to discuss in detail whether he exhibited other related factors such as those provided by the regulation as “governing norms” (including marked interference with employment and frequent periods of hospitalization), step two of Thun. 

Upon preliminary review, the Board referred the claim to the Director of Compensation Service for closer review to determine whether the evidence supported an extraschedular rating in excess of 50 percent for his migraine headaches. The Director reviewed the evidence and the Veteran’s contentions. However, the evidence failed to show hospitalizations for his migraine headaches and his migraines did not result in marked interference with employment as he was employed at the time. The Director stated that the evidence is wholly contemplated by the criterial utilized to assign the 50 percent evaluation; therefore, entitlement to an increased evaluation for migraine on an extraschedular basis for any time of the period on appeal is denied. The Board assigns some weight to the Director’s opinion. Despite the Director’s conclusion that his migraines do not result in marked interference with employment, the opinion as a whole, is consistent with the totality of the evidence.

While the Veteran now asserts that he is unemployed, making him entitled to an extraschedular rating in excess of 50 percent, the 50 percent rating schedular criteria specifically contemplates “severe economic inadaptability” due to prostrating and prolonged migraine headaches. In other words, the schedular criteria comes first in assessing the severity of his condition. It is only when the evidence “presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate,” that the analysis continues to step two (2). That is not the case here. The Board also notes that the Veteran is currently in receipt of a TDIU based, at least in part, on his migraine headaches.

(Continued on the next page)

 

Accordingly, the Board concludes that the evidence does not indicate an exceptional or unusual disability picture. The preponderance of the evidence is against the Veteran’s claim for an evaluation in excess of 50 percent for service-connected migraine headaches on an extraschedular basis. The benefit-of-the-doubt doctrine enunciated in 38 U.S.C. § 5107(b) is not applicable, as there is no approximate balance of evidence. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). The appeal is denied.

 

KRISTY L. ZADORA

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Pendleton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.