﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 201214-123820
DATE: February 26, 2021

ORDER

An extraschedular evaluation for a compensable rating for dyshidrosis and onychomycosis of the bilateral toenails, status post excision, is denied.

A separate 10 percent rating for status post right ingrown toenail excision with hallux rigidus and scar is granted.

A separate 10 percent rating for status post left ingrown toenail excision with hallux rigidus and scar is granted.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding the Veteran’s dyshidrosis and onychomycosis of the bilateral toenails, status post excision, presented such an exceptional disability picture as to render the schedular criteria inadequate.

2. The Veteran’s status post right ingrown toenail excision hallux rigidus and scar was manifested by no more than moderate symptoms during the appeal period.

3. The Veteran’s status post left ingrown toenail excision with hallux rigidus and scar was manifested by no more than moderate symptoms during the appeal period.

CONCLUSIONS OF LAW

1. The criteria an extraschedular evaluation for bilateral foot dyshidrosis and onychomycosis of the toenails, status post excision, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.68.

2. The criteria for a 10 percent rating for status post right ingrown toenail excision hallux rigidus and scar have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5284.

3. The criteria for a 10 percent rating for status post left ingrown toenail excision hallux rigidus and scar have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5284.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served active duty from October 1958 to October 1960.

An August 2012 Board decision denied a compensable rating for service-connected dyshidrosis and onychomycosis, toenails, both feet, status post excision. The Veteran appealed that decision to the U.S. Court of Appeals for Veterans Claims (Court). In April 2013, the Court issued an order that partially vacated the Board’s decision and remanded the matter on appeal for adjudication consistent with the Joint Motion for Partial Remand (JMPR) by the parties.

In November 2020, the agency of original jurisdiction (AOJ) issued a supplemental statement of the case (SSOC) denying an extraschedular rating for a compensable rating for dyshidrosis and onychomycosis, toenails, both feet, status post excision. The Veteran opted the claim into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a December 2020 VA Form 10182, Decision Review Request: Board Appeal, identifying the November 2020 SSOC, electing the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the November 2020 SSOC. 38 C.F.R. § 20.301.

1. An extraschedular evaluation for a compensable rating for dyshidrosis and onychomycosis of the bilateral toenails, status post excision, is denied.

2. A 10 percent rating for status post right ingrown toenail excision with hallux rigidus and scar is granted.

3. A 10 percent rating for status post left ingrown toenail excision with hallux rigidus and scar is granted.

The Veteran is assigned a noncompensable rating for dyshidrosis and onychomycosis, toenails, both feet, status post excision. The Veteran’s representative contends entitlement to a minimum 10 percent extraschedular rating for dyshidrosis and onychomycosis, toenails, both feet, status post excision. See December 2020 brief.

Neither the RO nor the Board are permitted to assign an extraschedular rating in the first instance; rather the matter must first be referred to the Director for extraschedular consideration. Anderson v. Shinseki, 22 Vet. App. 423, 426 (citing Floyd v. Brown, 9 Vet. App. 88, 95 (1996)). 

Here, January 2014, April 2017, and January 2019 Board remands instructed the RO consider whether the Veteran was entitled to an extraschedular rating for dyshidrosis and onychomycosis, toenails, both feet, status post excision. In July 2020, the RO referred the claim to the Director and recommended an increased evaluation to 10 percent on an extraschedular basis for dyshidrosis and onychomycosis toenails, bilateral feet, status post excision. In November 2020, the Director denied the claim for an extraschedular evaluation for dyshidrosis and onychomycosis toenails bilateral feet status post excision. 

Since the Director considered this issue as required by 38 C.F.R. § 4.16(b), the Board may proceed with adjudication on the merits. See Wages v. McDonald, 27 Vet. App. 233, 239 (2015). The initial determinations in extraschedular analysis by the RO and determinations by the Director are not binding on the Board even if favorable to the Veteran. See Anderson v. Shinseki, 22 Vet. App. 423, 427-429 (2009).

Consideration of an extraschedular rating requires a three-step inquiry. The first question is whether the schedular rating criteria adequately contemplate the veteran’s disability picture. If the schedular evaluation does not contemplate the level of disability and symptomatology shown and is found inadequate, then the second inquiry is whether the exceptional disability picture exhibits other related factors, such as marked interference with employment or frequent periods of hospitalization. See Thun v. Peake, 22 Vet. App. 111 (2008). The first Thun element compares a claimant’s symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms. Thus, the first and second Thun elements, although interrelated, involve separate and distinct analyses. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016). 

The Court has held the rating schedule must be deemed inadequate before extraschedular consideration is warranted. Sowers v. McDonald, 27 Vet. App. 472, 478 (2016). Extraschedular consideration is appropriate only after the agency has exhausted all other tools for a disability rating, whether direct, secondary, or analogous ratings. Morgan v. Wilkie, 31 Vet. App. 162, 168 (2019).

A review of the evidence shows a November 2009 Veteran statement that his great toenail pain was exacerbated by activity, walking, and standing. He reported the pain affects his daily activities and ability to perform occupational duties.

A November 2009 statement from the Veteran’s daughter observed the Veteran experienced pain related to his ingrown toenails of both feet. She observed it impacted his daily life and work. She observed the pain worsened with physical activity.

A November 2009 statement from the Veteran’s wife stated he suffered from ingrown toenails. She observed daily pain and his walking with a limp. She reported his pain was worsened with physical activity. She observed his ingrown toenails impacted his ability to perform daily tasks and work.

A December 2009 VA examination diagnosed status post right ingrown toenail excision with scar and onychomycosis and hallux rigidus and left ingrown toenail with onychomycosis. The clinician observed onychomycosis with bilateral ingrown toenails, right more tender than left. The clinician observed he walked more on his heels to avoid pressure on the big toe. The clinician stated the effect on the Veteran’s usual occupation and daily activity was trouble walking, standing, climbing ladders, and climbing stairs.

In February 2010, the Veteran had an ingrown toenail procedure with partial excision of the great right and great left toenails.

A March 2010 treatment visit noted the Veteran was having problems with his toenails. Physical examination observed an ingrown toenail and onychomycosis of the bilateral great toenails. The examiner assessed ingrown toenails.

An April 2010 VA skin examination stated onychomycosis or dyshidrosis were not present on examination.

A June 2010 treatment visit reported bilateral toe pain. Physical examination observed right and left nail removal secondary to onychomycosis. The clinician noted sensitivity from status post toenail removal on the right toe and onychomycosis on the left toe. The clinician wrote a treatment letter that stated the patient had a toenail removed on his right big toe, which was relatively sensitive, and onychomycosis on the left, which was somewhat uncomfortable. The clinician stated these conditions made it difficult to perform activities of daily living and his work.

A May 2011 treatment visit observed right toe tip neuropathy, with no significant ingrown toenail. The clinician assessed onychomycosis and neuropathy.

At a September 2011 treatment visit, the Veteran reported onychomycosis and dry skin limited his ability to function secondary to chronic itching, an inability to wear appropriate shoes, and painful toenail bases with walking. The clinician observed his nails were slightly onychomycotic. The clinician assessed onychomycosis and dry skin. The clinician wrote a treatment letter that stated the Veteran reported his feet and toes were painful all the time, cracking of the skin, and abnormal nails. He reported being unable to wear regular shoes or stand for long periods, at least partially related to this problem. The clinician stated the Veteran was unemployable for this condition and other medical problems.

A February 2012 treatment visit reported ingrown toenail with thickening and onychomycosis. The clinician stated the Veteran had significant difficulty with pain in the toe. The clinician observed the Veteran’s toenails were onychomycotic. He stated the patient’s great toenail was tender to touch. The clinician assessed onychomycosis and the toenail was removed. The clinician wrote a treatment letter stating the Veteran had significant onychomycosis bilaterally with significant difficulty walking. He stated the left great toenail was removed and treated with phenol to avoid regrowth of the nail. The clinician noted the Veteran required periodic pain medication. 

A February 2012 Veteran statement reported painful feet, toes, heels of feet, onychomycosis, and dyshidrosis. He reported constant pain with cracking skin. He reported wearing oversized shoes and being unable to stand for long periods, which was partially due to these problems. He reported the removal of his toenails left soft tissue exposed and sensitivity to the pressure from shoes when walking or standing.

At a March 2015 treatment visit, the Veteran reported problems with painful feet, including ingrown toenails. 

At a March 2015 VA examination, the Veteran reported problems with his toenails for many years. He stated his left toenail became painful and was removed in March 2015. The Veteran stated this condition impacted his work because he had to walk slow due to pain. He reported working part-time at a car dealership driving customers home that dropped their vehicles off for service. 

In a July 2015 sworn affidavit, the Veteran stated his ingrown bilateral toenails resulted in chronic pain, especially when walking and standing. He worked part-time as a driver and custodian. He reported the position required he was on his feet a lot, which worsened his pain and made it difficult to perform tasks in a timely manner. The Veteran also discussed the impact of his hearing loss, tinnitus, and headaches on his ability to work.

An October 2015 letter from the Veteran’s employer stated he worked as a part-time porter from October 2008 to October 2015. The employer observed the Veteran’s bilateral ingrown toenails caused pain, which caused him to walk slower and difficulty with walking and standing. The employer also discussed the impact of the Veteran’s hearing loss, tinnitus, and vision loss.

As noted above, the Court has held extraschedular consideration is not applicable to claims that may be properly evaluated with conventional schedular rating tools. See Morgan v. Wilkie, 31 Vet. App. 162, 168 (2019). Here, the Veteran contends entitlement to a higher rating due to toenail pain, sensitivity, skin cracking, and difficulty walking and standing. The Board notes the Veteran is already assigned a 10 percent rating for status post bilateral ingrown toenail excision with hallux valgus and scar. In assigning this rating, the February 2010 rating decision considered toenail pain, altered gait, and difficulty standing and walking. This rating is assigned under DC 5284, which assigns ratings based on foot injury severity. Under the circumstances of this claim, the Board finds the Veteran’s reported dyshidrosis and onychomycosis toenail symptoms can be contemplated under conventional schedular rating tools. As such, the assignment of an extraschedular rating is not appropriate.

As the Board has determined the Veteran’s reported toenail symptoms and associated functional limitations are or can be contemplated under the assigned rating for status post bilateral ingrown toenail excision, the Board considered entitlement to an increased rating for service-connected status post bilateral ingrown toenail excision with hallux rigidus and scar. 

The Veteran is assigned a 10 percent rating under DC 5284 for status post bilateral ingrown toenail excision with hallux valgus and scar. Under DC 5284, separate ratings may be assigned for each foot. A 10 percent rating is warranted for moderate other foot injuries. A 20 percent rating is warranted for moderately severe other foot injuries. A 30 percent rating is warranted for severe other foot injuries. A Note to Diagnostic Code 5284 instructs that with actual loss of use of the foot rate as a maximum 40 percent. 38 C.F.R. § 4.71a, DC 5284.

The words “slight,” “moderate,” and “severe” as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6.

The Board gives probative weight to the Veteran’s, his family’s, and his previous employer’s observations about his ingrown toenail symptoms and functional abilities. The statements are consistent with treatment records showing recurring ingrown toenail symptoms. The Board gives probative weight to his treating clinician’s findings. The clinician had a treatment relationship with the Veteran and performed examinations of the Veteran’s feet.

The Board finds the preponderance of the evidence supports awarding a separate 10 percent rating for each foot under DC 5284. The evidence shows bilateral foot symptoms related to his recurrent ingrown toenails and excisions. 

The Board finds the Veteran’s status post bilateral ingrown toenail excision were manifested by no more than moderate symptoms during the appeal period. The probative evidence shows toenail pain, sensitivity, and cracked skin associated with recurrent ingrown toenails and excisions. The probative evidence shows these symptoms caused him to walk slower and caused difficulty with prolonged walking, standing, ladders, and stairs. The probative evidence shows his ingrown toenails impacted his work due to having to walk slow and difficulty performing tasks in a timely manner. A September 2011 clinician statement opined the Veteran was unemployable due to his toenail disability and other medical conditions. The Board finds the preponderance of the evidence is against finding moderately severe disability. While the Veteran’s foot symptoms limited his ability to walk or stand for prolonged periods, the Veteran did not require a walker or wheelchair. Although the Veteran’s toenail disability caused him to walk slow and difficulty performing tasks in a timely manner, the Veteran worked part-time in a position that required standing and walking through 2015. Post-2015, the Veteran continued with regular treatment visits, but did not report toenail symptoms, including in visits specifically reporting foot symptoms. See June 2018 March 2020 treatment visits.

In conclusion, the Board finds that the preponderance of the evidence is against an extraschedular evaluation for a compensable rating for dyshidrosis and onychomycosis of the bilateral toenails, status post excision. The preponderance of the evidence supports a separate 10 percent rating for each foot for status post ingrown toenail excision with hallux rigidus and scar.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Winkler, Associate Counsel 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.